## Singer, Appellant, *v.* Oil City Redevelopment Authority.

Argued October 3, 1969.   Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Benjamin G. McFate,* with him *McFate, McFate and McFate,* for appellant.

*John D. Rynd, Jr.,* with him *Rynd and Olmes,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 30, 1970:

This case involves the condemnation of real estate owned by Victor Singer in Oil City, Pennsylvania, in and upon which he operated a retail grocery store. Said premises, together with several other properties, were condemned by the Redevelopment Authority of the City of Oil City as a part of an urban renewal project. The condemnation was prosecuted in accordance with the provisions of the Eminent Domain Code, Act of June 22, 1964 (1964 Special Session) P. L. 84, 26 P.S. §1-101 et seq. (Supp. 1969), the Declaration of Taking being filed December 7, 1964.

Singer was dissatisfied with the damages awarded him by the Board of Viewers and filed an appeal in the Court of Common Pleas. The case was then tried before a judge without a jury, and a judgment was finally entered in Singer's favor in the sum of $60,-790.50, allocated as follows: $55,000 for damages to real estate; $5,000 for business dislocation and loss of patronage under Section 609 of the Eminent Domain Code; and $790.50 for moving expenses under Section 610 of the Eminent Domain Code. In the court below, Singer claimed that certain items of machinery and fixtures used in the operation of the grocery store constituted part of the real estate taken under the Assembled Industrial Plant Doctrine, and if this were so, he was entitled to be compensated in an additional amount of $22,855[1] for damages to the real estate. In the alternative, Singer contended that if the Assembled Industrial Plant Doctrine did not apply, he was en-

---

[1] It was stipulated by the parties that if the Assembled Industrial Plant Doctrine applied in this case, the fair market value of the realty should be increased by this amount.

titled to additional damages of $17,725 for the reasonable expenses of removing, transporting and reinstalling the machinery, equipment and fixtures under Section 608 of the Eminent Domain Code. Both contentions were denied in the trial court, and Singer appealed here. The appeal concerns only the merit of these two claims for additional damages.

The first issues for decision, therefore, are whether the Assembled Industrial Plant Doctrine is still viable under the new Eminent Domain Code, and if so, does it apply under the facts of this case.

The Assembled Industrial Plant Doctrine stems from *Voorhis v. Freeman,* 2 W. & S. 116 (Pa. 1841), a case involving priority rights in the machinery of an iron rolling mill between a purchaser at a mortgage foreclosure sale and a creditor of the mortgagor who had levied on the machinery. In holding in favor of the purchaser of the realty, Mr. Chief Justice GIBSON said, at 119: "Whether fast or loose . . . all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold." This statement became the germ of the Doctrine. It has been applied in various industrial mortgage situations (*e.g., In re Taylor and Dean Mfg. Co.,* 136 F. 2d 370 (3d Cir. 1943), and *Central Lith. Co. v. Eatmor Chocolate Co. (No. 1),* 316 Pa. 300, 175 A. 697 (1934)) and in the separate area of local real estate taxation (*e.g., Jones and Laughlin Tax Assessment Case,* 405 Pa. 421, 175 A. 2d 856 (1961), and *United Laundries v. Board of Property Assessment,* 359 Pa. 195, 58 A. 2d 833 (1948)). The Doctrine has eventually evolved to: If the machinery, whether fast or loose, is vital to the business operation of an "industrial plant" and is a permanent installation therein, it is to be considered part of the real estate. See *Gottus v. Allegheny County Redevelopment Authority,* 425 Pa. 584, 229 A. 2d 869 (1967).

This Court held, as a matter of common law, in *Gottus v. Allegheny County Redevelopment Authority,* supra,[2] that the Assembled Industrial Plant Doctrine applied in the area of eminent domain, where the taking occurred prior to the effective date of the Eminent Domain Code of 1964, supra. This Doctrine was there carefully considered and approved. Unless, therefore, a contrary policy can be derived from the statute, this Doctrine, with whatever modifications are necessary or desirable therein due to the passage of the statute, will be extended to eminent domain cases under that statute.

Appellee-condemnor claims that our decision in *Gottus,* supra, was impelled by a necessity to fill a void in the law of eminent domain concerning damage to personal property of condemnees whose real property was taken; that the legislature acted to fill this void in the Eminent Domain Code of 1964; that this code, by its terms,[3] provides "a complete and exclusive procedure and law to govern . . . the assessment of damages"; that the code does not provide for the application of the Assembled Industrial Plant Doctrine, although it specifically provides other remedies concerning the personal property of condemnees; that such should be interpreted as an intent to exclude the application of the Assembled Industrial Plant Doctrine in eminent domain cases. We do not agree.

There is no doubt that the statute provides a com plete legal scheme in the area of eminent domain, in-

---

[2] This case was decided after the passage of the Eminent Domain Code of 1964 to a set of facts occurring before the passage of the act. Therefore, the legislature did not consider this case in formulating and deliberating upon that act, nor was the act applicable in the case.

[3] "It is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes and the assessment of damages therefor. . . ." Section 303, Eminent Domain Code, supra.

cluding the assessment of damages. Therefore, some authorization, whether explicit or implicit, must exist in the words of the statute for the Assembled Industrial Plant Doctrine to continue to be applicable in eminent domain cases.

Section 601 sets forth the standard of "just compensation," which term is defined thus in Section 602: "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this article."

Section 603 provides in part: "Fair market value shall be the price which would be agreed to by a willing and informed seller and buyer, taking into consideration, but not limited to, the following factors: . . . (3) The machinery, equipment and fixtures forming part of the real estate taken."

There are no criteria set forth in the statute as to when machinery, equipment and fixtures are part of the real estate and when merely personal property. This is left to the courts as a matter of common law. It is to this issue that the Assembled Industrial Plant Doctrine directly relates. Therefore, statutory language does exist for the continued application of the Doctrine, if and when its application is necessary to provide the condemnee with "just compensation." The extent to which the Doctrine, as presently existing, should be adopted under the Code should be determined in the light of the intent of the General Assembly in enacting the Code, the explicit statutory provisions of the Code, and the facilitation of the achieving of the statutory purposes.

The intent of the General Assembly in enacting the Eminent Domain Code of 1964 was expressed in House

Resolution No. 59, Session of 1959[4] (Reprinted in Snitzer, *Pennsylvania Eminent Domain*, p. 7), and it is in the spirit of that Resolution that we interpret the Code and make necessary modifications in the common law.

Four explicit provisions of the Code, in addition to those set forth before, form the basic statutory scheme for "just compensation" to condemnees in the situation of the appellant. These are §§607-610.[5] Section 607

---

[4] "The Pennsylvania House of Representatives adopted Resolution No. 59 of 1959 directing the Joint State Government Commission to propose a complete revision and codification of the law of eminent domain. House Bill No. 683 of 1963 was the product of the Commission's efforts. This bill secured House passage, but was not reported from Senate Committee. An almost identical bill was introduced during the Special Session of the Legislature in 1964, and was enacted into law as Act No. 6 on June 22, 1964." Snitzer, *Pennsylvania Eminent Domain*, p. 5.

This Resolution states in part:

"There is widespread dissatisfaction in this Commonwealth with the present laws relating to the condemnation of private property for public purposes and with the procedure in effect thereunder for determining the amount of damages to be awarded in connection with such takings. . . . The courts have been handicapped in developing satisfactory procedures to aid in arriving at substantial justice between the parties involved because of . . . statutory variances and because of judicial precedents which originated largely during the agrarian period of the Commonwealth's history. . . .

"A thorough and exhaustive study of all statutes on the subject of eminent domain now in force in this Commonwealth should be made, and in addition, comparable legislation of other states should be examined for the purposes of:

* * *

(4) Developing a more workable and modern definition of 'just compensation' which shall be applicable to all condemnors alike;"

[5] "Section 607. Removal of Machinery, Equipment, or Fixtures. In the event the condemnor does not require for its use machinery, equipment or fixtures forming part of the real estate, it shall so notify the condemnee. The condemnee may within thirty days of such notice elect to remove said machinery, equipment or fixtures,

provides for a limited option of removal to a condemnee who is the owner of machinery, equipment and

unless the time be extended by the condemnor. If the condemnee so elects, the damages shall be reduced by the fair market value thereof severed from the real estate.

"Section 608. Removal Expenses. The person having legal possession of machinery, equipment or fixtures on the condemned property, not forming part of the realty, including a tenant not entitled to any proceeds of the condemnation, if under the lease the tenant has the right to remove said machinery, equipment or fixtures, shall be entitled, as damages, to the reasonable expenses of the removal, transportation and reinstallation of such machinery, equipment or fixtures. Reasonable expenses under the provisions of this section shall not exceed twenty-five thousand dollars ($25,000) and in no event shall such expenses exceed the market value of the machinery, equipment and fixtures.

"Section 609. Business Dislocation Damages. The condemnee shall be entitled to damages, as provided in this section, for dislocation of a business located on the condemned property, but only where it is shown that the business cannot be relocated without substantial loss of patronage. Compensation for such dislocation shall be the actual monthly rental paid for the business premises, or if there is no lease, the fair rental value of the business premises, multiplied by the number of months remaining in the lease, not including unexercised options, not to exceed twenty-four months or multiplied by twenty-four if there is no lease. The amount of such compensation paid shall not exceed five thousand dollars ($5000) and shall not be less than two hundred fifty dollars ($250). A tenant shall be entitled to recover for such business dislocation even though not entitled to any of the proceeds of the condemnation.

"Section 610. Moving Expenses. The person having legal possession shall be entitled to, as damages, the reasonable moving expenses for personal property other than machinery, equipment or fixtures, not to exceed five hundred dollars ($500), when personal property is moved from a place of residence and not to exceed twenty-five thousand dollars ($25,000) when personal property is moved from a place of business. Receipts therefor shall be prima facie evidence of reasonable moving expenses. A tenant shall be entitled to recover these moving expenses even though he is not entitled to any of the proceeds of the condemnation. In no event shall such expenses exceed the market value of such personal property."

fixtures *forming* part of the real estate taken. Section 608 sets forth the benefits to which a condemnee who is the owner of machinery, equipment and fixtures *not forming* part of the realty, may be entitled. Section 610 provides damages in the form of moving expenses for all personal property *other than* machinery, equipment and fixtures. Under Section 609 a condemnee is entitled to damages for dislocation of a business located on the condemned property where he shows that the business cannot be relocated without a substantial loss of patronage. As garnered from these specific provisions, the purpose of the legislature seems to be to protect the economic position of the condemnee by making it possible for him to relocate his business, as a unit, elsewhere with the least burden possible.

In *Gottus*, supra, we held that the Assembled Industrial Plant Doctrine applied to the facts of that case in order to preserve the economic position of the individual whose property was condemned, relying on the reasoning of Judge CARDOZO in *Jackson v. State of New York*, 213 N.Y. 34, 35-6, 106 N.E. 758 (1914): "Condemnation is an enforced sale, and the State stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the State, after condemning a factory or warehouse, should surrender to the owner a stock of second-hand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of second-hand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value."

This reasoning in one respect is too narrow and in another respect is too broad. It is too narrow in that there seems no logical justification for preserving the

economic position of industrial plants while giving no such protection to commercial, service and other economic units. While this distinction[6] may have merit in the areas of industrial mortgages and municipal taxation, the reasoning behind the distinction does not extend to eminent domain where a forced sale affects all economic units equally. We feel compelled, therefore, to abolish the distinction as it relates to eminent domain, and formulate what is in essence an Assembled Economic Unit Doctrine, the same theory of the Assembled Industrial Plant Doctrine adapted to supplement the Eminent Domain Code. That there is a need for such we will later demonstrate.

The reasoning in *Jackson,* supra, is too broad, when viewed in conjunction with the Eminent Domain Code, in that it considers all condemnations to be enforced sales. The Eminent Domain Code attempts to limit the enforced sale to only the building and land on which the business is located. By making provision for removal, transportation and reinstallation compensation for the other elements of the business, the condemnation becomes merely an enforced relocation of the business. Only when such relocation of the business, as a unit, cannot take place does the injustice pointed out by Judge CARDOZO result. A few examples will illustrate this distinction.

In those instances where all or most of the machinery, equipment and fixtures of the economic unit are removable without significant injury to them, such that the economic unit is susceptible of continuance,

---

[6] The purpose for the distinction is not clear. It may have been based on the thinking that industrial plants have so much of their capital value tied up in machinery, etc., while a great percentage of the capital of a commercial entity is tied up in inventory and accounts receivable. On the other hand, it could be related to the long-time disfavor in Pennsylvania law to conditional sales and chattel mortgages.

as a comparable economic unit, in a new location, *only* those items of machinery, equipment and fixtures *not removable* from the condemned structure are to be considered a part of the realty taken by the condemnor. The economic position of the condemnee is preserved in this case, without the applicability of the Assembled Economic Unit Doctrine, for the Code provides: (1) in §608 for the reimbursement of expenses incurred in removing, transporting and reinstalling machinery, equipment and fixtures *not forming* a part of the real estate of the condemned structure; (2) in §610 for the reimbursement of reasonable expenses incurred in moving personal property other than machinery, equipment and fixtures (inventory would be included in this category); and (3) in §609 for damages resulting from a substantial loss of patronage due to the relocation. Being, in addition, compensated under §602 for the land and building taken, the condemnee is left in the same economic position he would have been in had there been no condemnation, except he is in a new location.

If the condemnee in the above example chooses not to relocate, he will similarly be in the same economic position as previously. He will be able to sell his business as a unit. Even if there is no market for his business, one must assume there would have been none also had he chose to sell his business on his own initiative. He always has the option of relocating the business until such time as the market becomes favorable. In addition, if a significant portion of the value of his business is derived from his steady patrons, he may still receive damages under §609, even if he chooses not to relocate and sells the business to another.

However, when such a portion of the assembled economic unit is not removable from the condemned property that that which is so removable will not constitute a comparable economic unit in a new location, then *all* machinery, equipment and fixtures, whether

loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty under the Assembled Economic Unit Doctrine, so as to entitle the condemnee to compensation therefor under §§601, 602 and 603(3). To hold otherwise would leave condemnee only with scattered pieces of second-hand machinery, equipment and fixtures, most probably significantly depreciated in value when severed from the economic unit. Since the condemnee cannot maintain his economic position by moving to a new location, the statutory scheme will not grant him "just compensation" without the applicability of the Assembled Economic Unit Doctrine.

Likewise, when the nature of the business requires a unique building for its operation, such that no other building within a reasonable distance is adaptable to the functioning of this business, then the condemned building, itself, will be considered an essential part of any meaningful economic unit in this industry. In this situation, even though all or most of the machinery, equipment and fixtures are removable, since no new site is available, condemnee cannot maintain his economic position by relocating. Therefore, all machinery, equipment and fixtures which are vital to the economic unit and a permanent installation therein will be considered a part of the real estate of the condemned property under the Assembled Economic Unit Doctrine. Only thus can the condemnee receive "just compensation."

Applying these principles to the retail grocery store situation here at issue, we find that appellant has received proper, fair and adequate compensation under explicit provisions of the Eminent Domain Code, and there is no need to apply the Assembled Economic Unit Doctrine to assure him "just compensation." A review of the record indicates that, with the possible exception of the painted, corrugated metal roof sign, all of the

41 items of machinery, equipment and fixtures were removable and capable of being adapted and reinstalled in another location as a comparable economic unit.

Although some of the items were specially constructed to conform with particular features of the condemned structure, such that they might be of greater utility there than elsewhere, they could be installed in a new location, could function adequately elsewhere, and there form a comparable economic unit. This may result in some inconvenience to the condemnee, but it is justified in order that the public programs involving eminent domain not be frustrated and impeded. Although the condemnee is entitled to "just compensation" and should not, as an individual, bear the costs of redevelopment appropriately the responsibility of the general taxpaying public, he should *not* have the option in every case of walking away from his machinery, equipment and fixtures and demanding payment therefor merely because they functioned more conveniently in the condemned property.

In view of this, in order for the Assembled Economic Unit Doctrine to apply here, appellant would have to show there was no other building within a reasonable distance which could have been suitably adapted to the functioning of his business. There was no evidence in the record of the existence of such a circumstance in this case.

Now that the Assembled Economic Unit Doctrine has been found inapplicable, it must be considered whether appellant is entitled to the additional damages claimed under §608 of the Eminent Domain Code. Before we decide this issue, however, it must be determined whether it is properly here on appeal.

This case was tried by the lower court without a jury. Therefore, Section 2 of the Act of April 22, 1874, P. L. 109, as amended by the Act of July 10, 1935,

P. L. 640, §1, 12 P.S. §689, applies to its procedure and to any appeal arising therefrom.[7]

We held in *Meitner v. Scarborough,* 321 Pa. 212, 184 A. 81 (1936), that the Act of 1874, as amended, supra, is mandatory and must be complied with strictly.

Under the provisions of that Act, supra, the decision of the court in favor of one of the parties must be in writing, but it is not necessary for a court trying a case without a jury to state separately the findings of fact and conclusions of law unless counsel for either party make a request therefor.

The preliminary decision of the judge is neither a verdict nor a judgment, and cannot be reviewed on appeal. Exceptions must be taken to the findings and conclusions, and it is from the court's decision upon such exceptions that an appeal lies. *Meitner v. Scarborough,* supra.

In this case, immediately following the trial, the judge made his preliminary findings in the form of a verdict for the plaintiff (condemnee-appellant) of $83,645.00. The condemnor-appellee thereafter presented to the lower court its request for Statement of Facts and Conclusions of Law for the purpose of filing exceptions to or taking an appeal from the decision of the lower court. The plaintiff made no such request.

Under Conclusions of Law, the lower court judge initially held: (1) The Assembled Industrial Plant Doctrine applied to the case and that the value of the subject machinery and equipment in place should be considered in fixing the realty value. (2) The plaintiff was not entitled to damages under §608 of the Eminent Domain Code, specifying no reasons for the latter. Appellee excepted to the first conclusion of law. Ap-

---

[7] The provisions of the statute have been suspended by the Pa. Rules of Civil Procedure only as to trespass actions. See Rules 1048(f) and 1401.

pellant made no exceptions.  Upon reconsideration of the issue, the lower court sustained the appellee's exception, without referring to any possible change in result in the second conclusion of law.  The appellant appealed from the sustaining of the exception, and that issue is properly here on appeal.  But is appellant precluded from appealing the denial of damages under §608 by his failure to except to the findings of the lower court as is required by the Act of 1874, as amended, supra?

Although it does seem to be a technical violation of the statute not to have excepted to the lower court's finding against the appellant on the law concerning §608, it must be remembered that a finding that the Assembled Industrial Plant Doctrine applied negatived any recovery under §608.  The two theories were of necessity exclusive.  If the Assembled Industrial Plant Doctrine applied, any machinery and equipment forming an essential and necessary part of the plant which was a permanent installation therein is considered a part of the realty.  Such a finding negatives any recovery under §608, because this section only permits recovery for machinery and equipment " not part of the real estate."  In such a situation, it is not practical to require the appellant to except to one of the findings of the lower court.  If the reason for the denial of the compensation under §608 was the finding by the court of the applicability of the Assembled Industrial Plant Doctrine, when the lower court later reversed itself on this issue, appellant should not be precluded from arguing a basis of possible recovery that had been argued below as an alternative.

However, in this case, it is not clear that the denial of the compensation under §608 was the finding by the court of the applicability of the Assembled Industrial Plant Doctrine *alone*.  Even if the Doctrine had been held inapplicable, there is doubt whether appellant

came within the statutory terms of §608. The appellant did not remove, transport and reinstall the equipment and machinery here at issue. Instead he terminated his business, removed the majority of the equipment, disposed of it by sale on the premises to third parties, who transported it from the premises for whatever use they might have for it, or removed some to his storage and abandoned the remainder. The appellant contends that he should be awarded, as damages, what his reasonable expenses *might have been* had he chosen to remove, transport it and reinstall it in a new place of business. It is not clear that this is compensable under the statute, nor is it clear that this was not an additional basis for the trial court's denial of recovery under §608.

The trial court, when hearing a case without a jury, is not required to separately list subsidiary and ancillary facts to support the judgment, but need only find the material facts controlling issues raised. If the absence of separate listing of subsidiary facts might prejudice appellant's case, such findings should be requested. *First National Bank v. Jones' Estate,* 334 Pa. 577, 6 A. 2d 273 (1939) ; and *Hall & Co., Inc. v. Lyon, Singer & Co.,* 286 Pa. 119, 133 A. 217 (1926).

Thus, in this case, the appellant should have at least requested the basis of the conclusion of law denying him damages under §608, when he was aware that there were at least two possible bases for such a conclusion. If both bases were then indicated, he could have excepted to that denying relief because of his failure to come within the statutory terms and preserved his right of appeal on that issue.

The appellee submits that the appellant should not be permitted to reach back into the middle of the proceedings and extract a conclusion of law, adversely affecting his interests at that time, to which he made

no exception but actually approved by motion, and use this as a basis of appeal. With this we agree.

Since the appellant failed to request the necessary bases of the conclusion of law and except thereto as required by the Act of 1874, and since we have held in *Meitner v. Scarborough,* supra, that the Act of 1874, as amended, supra, is mandatory and must be complied with strictly, we do not have jurisdiction over this portion of the appeal. This portion of the appeal is, therefore, quashed.

Judgment affirmed.

Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.