## Pittsburgh National Bank *v.* Urban Redevelopment Authority of Pittsburgh.

Argued October 20, 1970, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and BARBIERI. Judge MANDERINO disqualified himself and did not participate in the decision.

*Thomas H. Welsh,* with him *William G. Sutter, Jr., Metz, Cook, Hanna & Kelly,* for appellant.

*William J. Staley,* with him *James M. Arensberg, Everett K. Dilworth,* and *Tucker, Burke, Campbell & Arensberg,* for appellee.

OPINION BY JUDGE BARBIERI, March 3, 1971:

This is an appeal by the Urban Revelopment Authority of Pittsburgh (Condemnor) from an order of the lower court dismissing appellant's motion for a new trial. Acting under its power of eminent domain

pursuant to the Act of June 22, 1964 (Special Session) P. L. 84, 26 P.S. §1-101 et seq. (Supp. 1970), Condemnor appropriated a six-story building owned by the Pittsburgh National Bank (Condemnee). The first floor and mezzanine of the building contained the Condemnee's North Side Branch. The upper five floors were rented offices.

Condemnor filed a Declaration of Taking on May 6, 1966 and a Petition for Appointment of Viewers on June 6, 1966. The report of the Board of Viewers was filed on June 19, 1968, awarding Condemnee $600,000. Condemnee appealed on July 3, 1968. A trial then held before a judge of the Court of Common Pleas of Allegheny County and a jury resulted in a verdict in favor of Condemnee for $780,000. A motion by Condemnor for a new trial, presented and argued before a court en banc, was dismissed on February 6, 1970. This appeal followed.

The first of the appellant-Condemnor's contentions is that the verdict of the jury was excessive and against the weight of the credible evidence. Condemnor advances two arguments in support of this contention: (1) Condemnor's expert witness was more objective and better informed than the Condemnee's expert witnesses; (2) the jury verdict was disproportionate to the award of the Board of Viewers. Neither reason is persuasive. As to the first, the jury had a full opportunity to assess the persuasiveness of the witnesses and apparently found the opposing testimony almost equally convincing. The verdict was 31.6% more than the Condemnor's expert's appraisal and 28.7% less than the average of the Condemnee's experts' appraisals. The jury verdict does not "shock one's sense of justice" as it must for this Court to award a new trial on the ground that the verdict is against the weight of the evidence. See, *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289,

265 A. 2d 516, 518 (1970). As to the second reason, the Supreme Court has recently said: "While the award of the Board of Viewers is an important circumstance to be considered when a new trial is requested either for inadequacy or excessiveness of the jury's verdict, it is not controlling. Dague v. Commonwealth of Pennsylvania, 418 Pa. 340, 211 A. 2d 527 (1965)". *Boring v. Metropolitan Edison Company,* 435 Pa. 513, 524, 257 A. 2d 565 (1969). In *Boring,* the Court approved a jury verdict which was almost five times the award of the Board of Viewers. In our case, the verdict was about 32% greater than the award. The 32% disparity thus could not be controlling and we find no other important circumstances in the record indicating that the verdict was either excessive or against the weight of the credible evidence. See also *Morrissey v. Commonwealth, Department of Highways,* 440 Pa. 71,    A. 2d    (1970).

The second of the Condemnor's contentions is that one of the trial judge's points in his charge was confusing because it used the Assembled Economic Unit Doctrine as articulated in *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970), without explicitly saying so, and because the charge was contrary to a stipulation of the parties. The charge in question reads: "In your determination of the just compensation to the Plaintiff for the loss of its property as a whole and in your determination of the fair market value of it at the time of its condemnation, you must consider the machinery, equipment and fixtures testified to as actually being in place on the first floor of the building involved at the time of the condemnation as a part of the Plaintiff's property; and you may not under the law attach to such machinery, equipment and fixtures any separate value thereto as a basis of any separate compensation to the Plaintiff therefor.

You may take into consideration any special value the first floor of the building involved may have had for its use as a banking facility, including any enhancement thereof by the fact that there was actually in place such machinery, equipment and fixtures."

On the facts of this case, the lower court's charge was in accord with Pennsylvania law. In our opinion, the lower court did not charge on the Assembled Economic Unit Doctrine as expounded in *Singer*. The Assembled Economic Unit Doctrine is a test for determining whether or not the machinery, fixtures and equipment in a building involved in a condemnation case should be characterized as a part of the real estate. Since the prior law was that everything which is attached to the freehold is considered a part of the real estate (see *Brocket v. Ohio & Pennsylvania R. Co.*, 14 Pa. 241 (1850)), the thrust of the Supreme Court's decisions in *Singer*, and in *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A. 2d 869 (1967), has been to allow the characterization of unattached or movable machinery, equipment, and fixtures as part of the real estate in proper cases. But in the case before us there has been no dispute at any stage of the litigation as to whether certain items in the Condemnee's banking offices were attached or unattached, part of or not part of the real estate, either under pre-*Singer* or post-*Singer* law. In fact, there was a stipulation by the parties at trial that they had previously agreed that "the depreciated value of machinery and equipment *forming part of the subject real estate* as of May 6, 1966 [was] $109,000." (Emphasis added) This stipulation is significant in that it indicates that there was no disagreement among the parties as to what items were part of the real estate. Another indication of agreement on this issue is the Condemnee's uncontroverted statement in its brief that Condemnor had

already compensated Condemnee for the removal of "the loose equipment, such as furniture and safe deposit boxes," apparently under §608 of the Eminent Domain Code, 26 P. S. §1-608. Thus the trial court did not err in failing to rely either explicitly or implicitly on the Assembled Economic Unit Doctrine.[1]

Finally, even if the language in the judge's charge could be construed as applying the Assembled Economic Unit Doctrine, we would find no error in such an application to the facts of this case. The Condemnee's property certainly comes within the class of "commercial, service and other economic units."[2] *Singer, supra* at 65.

Nor did the trial court err in its charge by misconstruing the effect of the stipulation. Condemnor contends that the trial court should have included in the charge the stipulation that machinery and equipment forming part of the real estate had a depreciated value on the date of condemnation of $109,000. Condemnor contends that this stipulation constituted an agreement as to damages under §501 of the Eminent Domain Code. 26 P.S. §1-501. Section 501 provides: "At any stage of the proceedings, the condemnor and condemnee may agree upon all or any part or item of the damages, and proceed to have those parts or items thereof not agreed upon assessed as herein provided". Although the dif-

---

[1] Although the precise definition of "attached" may not be "actually being in place on the first floor", as the judge's remarks in his charge imply (see, e.g., *Hill v. Wentworth*, 28 Vt. 428 (1856)), it is sufficiently accurate in light of the parties' apparent agreement as to what was "attached". See Mr. Justice EAGEN's language in *Singer* indicating that removability may be tested by damage to the machinery, equipment and fixtures, rather than by damage to the condemned real estate. 437 Pa. at 65-66.

[2] See our opinion filed this date so holding in the case of *North Side Deposit Bank v. Urban Redevelopment Authority of Pittsburgh*, 1 Commonwealth Ct. 274, A. 2d (1971).

ference between the word "value" in the stipulation and the word "damages" in the Statute may seem to be an insignificant one because damages are measured in terms of value (see §602, 26 P.S. §1-602, the difference is an important one and should not be ignored. The court below amplified this difference when it stated, in denying the Redevelopment Authority's motion for a new trial: "There is absolutely no basis in the evidence for inferring, as the [Condemnor] does, that the [Condemnee] agreed to accept a partial settlement of damages covering only the machinery and equipment . . . [T]he evidence shows [that] the sole purpose of the stipulation was to give the various real estate expert witnesses a valuation for the machinery and equipment which each could use in making his appraisal of the *total* value of the condemned property." (Emphasis in original)

The decision of the Court of Common Pleas of Allegheny County, dismissing the Condemnor's motion for a new trial, is affirmed.

The foregoing opinion was prepared by Judge (now Justice) ALEXANDER F. BARBIERI before his resignation as a judge of the Commonwealth Court. It is hereby adopted as the opinion of the Court.