**UNITED STATES of America,**
**Plaintiff,**

**v.**

**252.36 ACRES OF LAND, Defendant.**

**Civ. A. No. 67–558.**

United States District Court,
W. D. Pennsylvania.

Jan. 13, 1972.

---

**668**

Joel B. Strauss, Asst. U. S. Atty., Pittsburgh, Pa., Anthony R. Sluga, George L. Carpenter, Dept. of Justice, Washington, D. C., for plaintiff.

Martin Cusick, Sharon, Pa., Fitch & Kendall, Salem, Ohio, Bernard J. Wilkes, Youngstown, Ohio, for defendant.

## OPINION

DUMBAULD, District Judge.

In the pending land condemnation case, the owners and the federal government are in disagreement as to whether certain sand and gravel processing machinery located on the tract taken at the time taken are or are not compensable as being part of the real estate under the Pennsylvania industrial plant doctrine. Testimony has been taken, and it is believed that a reasoned ruling by the Court on this preliminary issue may expedite and simplify trial or settlement of the case.

■ What the constitutional concept of "property" [1] contains within its scope, is of course ultimately a question of federal law.[2] But by reason of the comprehensiveness of the term, and the fact that most property interests are created under or generated by State law of one jurisdiction or another, federal courts normally [3] look to State law to determine whether or not a particular interest is "property" or not, or is too remote or inchoate to be so regarded, and to determine what is the precise extent or duration of the interests created or recognized by State law. U. S. ex rel. T. V. A. v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390 (1943); DeSylva v. Ballentine, 351 U.S. 570, 580–81, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); U. S. v. Certain Property, 344 F.2d 142, 145 (C.A.2, 1965); In re Taylor & Dean Mfg. Co., 136 F.2d 370, 372 (C.C.A.3, 1943).

Looking, then, to Pennsylvania law for the rule applicable in the case at bar, we are directed to two leading cases: Gottus v. Allegheny Co. Authority, 425 Pa. 584, 229 A.2d 869 (1967), and Singer v. Oil City Authority, 437 Pa. 55, 261 A.2d 594 (1970).

In · *Gottus* the owners ran a retail cleaning business on the condemned premises. They removed to a new location certain racks and pressing equipment, but left behind certain cleaning and washing machinery which circulated and recycled a petroleum base solvent. This machinery, permitted as a non-conforming use, could not have been used at the new location because of zoning regulations. 425 Pa. at 585–86, 589, 229 A. 2d 869.

---

1. The Fifth Amendment provides "nor shall private property be taken for public use without just compensation."

2. Just as the issue as to what compensation is "just" is ultimately a federal question.

3. If there is an "entirely strange" idiosyncrasy in the particular State law, the federal court would be free to disregard such an anomalous feature. 351 U.S. at 581, 76 S.Ct. 974, 100 L.Ed. 1415.

The Court held that the Assembled Industrial Plant Doctrine should be applied, and that compensation for the abandoned machinery had properly been awarded.

Justice Eagen cited the often quoted language of Judge Cardozo in Jackson v. State, 213 N.Y. 34, 35–36, 106 N.E. 758 (1914):

> " 'Condemnation' is an enforced sale, and the state stands toward the owner as buyer toward seller. On that basis the rights and duties of each must be determined. It is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of secondhand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value."

■ For application of the doctrine, originally evolved to protect mortgagees of industrial plants, it is necessary that the machinery involved be vital to the business operation and permanently required for its functioning. 425 Pa. at 587, 589, 229 A.2d 869.

In *Singer* the doctrine was rechristened as the Assembled Economic Unit Doctrine (thus being extended to commercial as well as industrial plants *stricto sensu*) [437 Pa. at 65, 261 A.2d 594], and also reshaped so as to conform to the statutory scheme of eminent domain established by the Act of June 22, 1964, P.L. 84, 26 P.S. § 1–101 et seq.

In effecting this reconciliation with the statutory scheme, the Court excluded the applicability of the rechristened doctrine in cases where the damages awarded in other provisions of the statute enabled the owner of the enterprise to re-

locate his business as a going concern at a new location. "The Eminent Domain Code attempts to limit the enforced sale to only the building and land on which the business is located. By making provision for removal, transportation and reinstallation compensation for the other elements of the business, *the condemnation becomes merely an enforced relocation of the business*." [437 Pa. at 65, 261 A.2d at 599].

In further elaboration of this reshaped regime, Justice Eagen states:

> In those instances where all or most of the machinery, equipment and fixtures of the economic unit are removable without significant injury to them, such that the economic unit is susceptible of continuance, as a comparable economic unit, in a new location, *only* those items of machinery, equipment and fixtures not *removable* from the condemned structure are to be considered a part of the realty taken by the condemnor. . . .

> However, when such a portion of the assembled economic unit is not removable from the condemned property that that which is so removable will not constitute a comparable economic unit in a new location, then *all* machinery, equipment and fixtures, whether loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty under the Assembled Economic Unit Doctrine, so as to entitle the condemnee to compensation therefor under §§ 601, 602 and 603(3). To hold otherwise would leave condemnee only with scattered pieces of second-hand machinery, equipment and fixtures, most probably significantly depreciated in value when severed from the economic unit. Since the condemnee cannot maintain his economic position by moving to a new location, the statutory scheme will not grant him "just compensation" without the applicability of the Assembled Economic Unit

Doctrine.[4] [437 Pa. at 65–66, 66–67, 261 A.2d at 600]

An additional rule applies to specially constructed items which nevertheless can function satisfactorily at a new location:

Although some of the items were specially constructed to conform with particular features of the condemned structure, such that they might be of greater utility there than elsewhere, they could be installed in a new location, could function adequately elsewhere, and there form a comparable economic unit. This may result in some inconvenience to the condemnee, but it is justified in order that the public programs involving eminent domain not be frustrated and impeded. Although the condemnee is entitled to "just compensation" and should not, as an individual, bear the costs of redevelopment appropriately the responsibility of the general taxpaying public, he should *not* have the option in every case of walking away from his machinery, equipment and fixtures and demanding payment therefor merely because they functioned more conveniently in the condemned property. [437 Pa. at 68, 261 A.2d at 601]

What, then, is the status of the Pennsylvania law applicable in a federal condemnation case such as the case at bar presents?

Since the provisions of the Pennsylvania code regarding compensation for relocation damages, which formed the basis of the Supreme Court's restructuring of the Industrial Plant Doctrine, do not apply to the federal government as condemnor, a simple solution would be to disregard the rules elaborated in *Singer*, and apply the traditional Industrial Plant Doctrine as formulated in *Gottus* and other pre-*Singer* cases.

This would not be right, however, since the motives of the Court in *Singer* were to achieve justice more exactly, and these grounds would be persuasive also to a federal court.

■ Moreover, it is desirable, as pointed out by Judge Friendly in a case previously referred to, that uniformity between State and federal condemnations be preserved to the maximum possible extent.

"Here the convenience to federal takers and Government lawyers in having the same writ run on both sides of the Hudson is of slight significance as compared to the need for New York business men planning to invest in trade fixtures to know that what is real property on Broadway if the city or state condemns it, will be no less real property if taken instead by the federal government." [5]

Furthermore, to the extent that the Assembled Plant Doctrine is curtailed by *Singer* (even for reasons based upon statutory provisions) it seems clear that it *pro tanto* ceases to be the common law of Pennsylvania, and therefore ceases to be applicable as viable State law by a federal court in a condemnation proceeding.

We think it proper, therefore, to determine what is included in the compensable items of realty in the case at bar by applying the *shrunken* Assembled Plant Doctrine as reshaped in *Singer*. Where we find *Singer* incomprehensible or irrational we shall follow our own common sense.

Upon first reading of the first paragraph quoted above from *Singer*, one gets the impression that it describes a situation where the plant as a comparable economic unit is able to continue at a new location *without* the unremovable items left behind.

However, this interpretation is impossible to accept because the classical Assembled Plant Doctrine includes and embraces 100 per cent of all the machinery

---

4. The next paragraph, omitted here, authorizes full compensation for *all* machinery if a unique building is required, and no suitable structure is available within a reasonable distance. 437 Pa. at 67, 261 A.2d at 600.

5. U. S. v. Certain Property, 344 F.2d 142, 144–45 (C.A.2, 1965).

or equipment vital to the operation of the economic unit. Nothing not necessary to the operation of the plant can be considered as part of the plant. If the plant manager garaged his Rolls-Royce at the plant, or his yacht where price-fixing conferences in the industry are held, they would never have been deemed to be included in the Assembled Plant Doctrine.

Therefore, *in every case* it is necessary to remove 100 per cent of the items in order for the plant to operate as a comparable economic unit as before. Disregarding items *de minimis*, this paragraph must be interpreted as meaning that the removable items are capable of functioning in their usual and appropriate manner as part of an operating comparable economic unit; and that, in conjunction with the equivalent of what has been left behind, which must be readily available on the market and procurable from the proceeds of the condemnation, the plant at the new location is capable of functioning as a comparable operating unit.

Similarly the second quoted paragraph must receive a like interpretation. Here a situation is described where what must be left behind is so indispensable to the continued operation of the unit that it has the same effect as the situation referred to in note 4, *supra,* where a unique building is indispensable to the continued operation of the business, and can not reasonably be replaced.

Likewise the last paragraph relating to items specially designed which are of greater utility than at the original location but will function adequately elsewhere, must be taken to mean that they can at the new location perform their normal and appropriate function, not that standing alone and *per se* they constitute a comparable economic unit.

█ Applying this common sense interpretation to the case at bar, we find that the owners should not be compen-sated for the mobile and readily removable articles described in items 30, 44 and 49–61 both inclusive, of Exhibit A received at the hearing.

These items are usable in a new location for their normal and appropriate purpose as part of an assembled economic unit or sand and gravel plant.

To regard these as compensable under the Assembled Plant Doctrine would amount, in Judge Eagen's language, to an owner's "walking away from his machinery."

The testimony indicated that some of the heavy Euclid trucks (referred to colloquially as "Ukes") might present problems by reason of exceeding permitted weights on the highway, and requiring special permits. However, the testimony also shows that such permits are often granted, and would appropriately be granted in the case of a "one-shot" removal movement. Moreover, how did they get to the plant in the first place, unless special permits were available? We anticipate no insuperable obstacles to removal of these items.

On the other hand, the items that have been solidly fastened to firm foundations embedded in the soil, which the testimony indicates can not be removed without damage, or which it is not economically feasible or worth while to remove, should be treated as compensable under the Assembled Economic Unit doctrine expounded in the *Singer* case, and regarded as part of the real estate condemned by the government.

Inasmuch as this opinion merely constitutes an advance ruling on the nature of evidence admissible *vel non* to show the value of the property condemned, we shall make no order; but trust that the exposition of the Court's views set forth herein will be useful to the parties in their preparation for trial as well as possibly helpful in expediting negotiations for settlement.