Redevelopment Authority *v.* Yee Kai Teung.

Argued February 25, 1972, before Judges KRAMER, MENCER and BLATT, sitting as a panel of three.

*Gilbert E. Caroff,* for appellant.

*Morton Meyers,* with him *Marlin B. Stephens,* for appellee.

OPINION BY JUDGE BLATT, March 30, 1972:

The appellant Authority (hereinafter "condemnor") has been engaged in condemning certain properties in the First Ward of the City of Johnstown in order to carry out its Market Street West Urban Renewal Project. The property of the appellee (hereinafter "condemnee") was located in this area, and consisted of 999 square feet of land occupied by a three-story frame building. Half of the basement and half of the first floor were used by a tenant as a sandwich shop and for the manufacture of candy. The other half of the first floor and basement were used by the condemnee as a laundry, while the upper two floors were used for the storage of laundry equipment and supplies and as living quarters by the condemnee and his family. Numerous fixtures used in the laundry business were installed on the premises.

An eminent domain action against the condemnee's property was properly commenced by the filing of a Declaration of Taking by the condemnor. When the condemnee refused to accept the amount offered as just compensation, the condemnor requested that a rule for possession issue. The rule was issued and an answer was filed thereto by the condemnee. After a hearing, the court entered an order dismissing the rule on the ground that the condemnor had not offered just compensation, holding that it should have used the Assembled Industrial Plant Doctrine in arriving at the estimated value. Exceptions were filed to the court's findings but were subsequently withdrawn. Condemnor thereafter offered a higher estimate of value, this time based upon the Assembled Industrial Plant Doctrine, and, upon payment into court of the amount tendered, the rule for possession was made absolute.

The case was heard by the Board of Viewers, which entered an award of $50,712.16 for general damages and of $500.00 for special damages. The condemnee appealed the award, and a jury verdict was subsequently entered awarding the condemnee $68,000.00 in general damages and $5,000.00 in relocation damages. The condemnor then moved for a new trial on the ground that the verdict was excessive. The condemnee had himself estimated the value of the property to be $132,000.00, and his two appraisers had presented figures of $94,700.00 and $98,000.00 respectively, while the condemnor's appraiser testified to a value of $40,000.00. The motion for a new trial was denied by the Court of Common Pleas of Cambria County sitting *en banc,* and an appeal was brought by the condemnor to this Court.

The condemnor has raised a number of grounds on which it is argued that a new trial should be granted:

(a) That the lower court should never have applied either the Assembled Industrial Plant Doctrine or the Assembled Economic Unit Doctrine in ascertaining the value of condemnee's property, because the fixtures involved are not functional in relationship to the entire building;

(b) That, if the Assembled Economic Unit Doctrine is applicable, business dislocation damages should *not* be allowable;

(c) That the lower court erred in permitting the condemnee's own estimate of value to be received as evidence;

(d) That the lower court did not properly instruct the jury on valuation under either the Assembled Industrial Plant Doctrine or the Assembled Economic Unit Doctrine; and

(e) That the verdicts were excessive and against the weight of credible evidence.

We have carefully considered the arguments raised by the condemnor, but, for the reasons set forth below, we do not agree that a new trial should be granted.

The condemnee has urged that, by withdrawing exceptions to the lower court's denial of possession, the condemnor has accepted the applicability of either the Assembled Industrial Plant Doctrine or the Assembled Economic Unit Doctrine. It is condemnee's contention that the order denying possession was appealable, and by failing to appeal at the time the order was made, the condemnor forfeited its right to raise the issue in later proceedings involving the condemnation. The condemnor argues that the order denying possession was merely an interlocutory order and not appealable, because the Eminent Domain Code provides for an appeal only ". . . from any final order or judgment of the court of common pleas. . . ."[1]

In support of his position, the condemnee cites *Philadelphia, Morton & Swarthmore Street Railway Company's Petition,* 203 Pa. 354, 53 A. 191 (1902), where an order permitting one street railway company to take possession of the tracks of another was held appealable. The issue of who should have possession of the tracks was the central issue of the case, the matter of damages being merely incidental. *Philadelphia, Morton* was distinguished by the Supreme Court in *Seligsohn Appeal,* 410 Pa. 270, 189 A. 2d 746 (1963), in which an order for possession was found to be interlocutory and not appealable but where the central issue was not possession, but the sufficiency of the bond. The Court noted that, once the issue of the bond was settled, the matter of possession was merely academic. In the instant case, it appears that the amount of just compensation was the central issue between the parties, and not the right of

---

[1] Act of June 22, 1964, P. L. 84, Art. V, §523, 26 P.S. §1-523.

possession, so that the order denying possession would, therefore, have been interlocutory and not appealable. This would mean that the applicability to this condemnation of either the Assembled Industrial Plant Doctrine or the Assembled Economic Unit Doctrine is properly before this Court. Be that as it may, however, a final determination of this particular issue is immaterial, for the condemnee's property was properly subject to valuation under either of these doctrines, and the appealability of the order for possession is therefore irrelevant.

The Assembled Industrial Plant Doctrine has long been applied in Pennsylvania in mortgage and taxation cases. *See, Central Lith. Co. v. Eatmore Chocolate Co.,* 316 Pa. 300, 175 A. 697 (1934). And, in *United Laundries, Inc. v. Board of Property Assessment,* 359 Pa. 195, 58 A. 2d 833 (1948), it was specifically held that a commercial laundry is an "industry" within the doctrine. Basically, the doctrine is that machinery and equipment necessary for the operation of a plant and placed therein become fixtures, whether or not they are attached to the realty. The doctrine was first applied to eminent domain proceedings in Pennsylvania in *Gottus v. Allegheny County Revelopment Authority,* 425 Pa. 584, 229 A. 2d 869 (1967), where the industry involved happens also to have been a commercial laundry. Subsequently, the doctrine was expanded by the Supreme Court to cover commercial, service and other economic units aside from industrial plants, and was retitled the Assembled Economic Unit Doctrine. *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970).

In *Singer, supra,* the Court said that the doctrine may be applied under two sets of circumstances: one, where that portion of a business which is removable would not be sufficient to permit the owner to constitute

a comparable economic unit in a new location; and the other, "[W]hen the nature of the business requires a unique building for its operation, such that no other building within a reasonable distance is adaptable to the functioning of this business, then the condemned building, itself, will be considered an essential part of any meaningful economic unit in this industry. In this situation, even though all or most of the machinery, equipment and fixtures are removable, since no new site is available, condemnee cannot maintain his economic position by relocating. Therefore, *all* machinery, equipment and fixtures which are vital to the economic unit and a permanent installation therein will be considered a part of the real estate of the condemned property under the Assembled Economic Unit Doctrine. Only thus can the condemnee receive 'just compensation.'" 437 Pa. at 67, 261 A. 2d at 600. (Emphasis in original.)

The condemnee's property here was a commercial laundry and clearly the type of property to which the Assembled Industrial Plant Doctrine could be applied. Additionally, there was testimony that condemnee drew most of his business from hotels and a YMCA in the immediate vicinity of the laundry, and that attempts had been made to find an alternative site within a reasonable distance, but that no suitable location could be found. Even if, therefore, the condemnee could remove enough of his equipment to permit relocation, he could not possibly relocate without moving to such a great distance as to make the maintenance of his economic position impossible. This building, therefore, was unique in the area for the purpose to be served, and the Assembled Economic Unit Doctrine would be properly applied in ascertaining just compensation for the condemnee.

The condemnor contends that the Assembled Economic Unit Doctrine would not be applicable when, as

here, the fixtures involved are not functional in relationship to the entire building. This Court, however, has already rejected this argument in *Pittsburgh National Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 248, 274 A. 2d 567 (1971), and *North Side Deposit Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 274, 274 A. 2d 215 (1971). In the latter case, we stated: "[S]ince the Code includes tenants within its definition of 'Condemnee'; there is no apparent reason why the Doctrine (Assembled Economic Unit Doctrine) should not apply to an economic unit such as a bank which occupies only a portion of a condemned property." 1 Pa. Commonwealth Ct. at 285, 274 A. 2d at 220.

The condemnee was awarded $5,000.00 as business dislocation damages, and this award was a proper one. Section 609 of the Eminent Domain Code provides that: "The condemnee shall be entitled to damages . . . for dislocation of a business . . . where it is shown that the business cannot be relocated without substantial loss of patronage." There is no basis for the argument that Section 609 does not apply when the business is an assembled economic unit. A condemnee may still relocate his business even if his equipment cannot be moved. As pointed out in *Singer, supra,* it is Section 608 of the Code, dealing with removal expenses, which is mutually exclusive as to the Assembled Economic Unit Doctrine.

During the course of the trial, the condemnee twice attempted to testify as to the value of his property, but the condemnor's objections thereto were sustained, apparently because he was then said to be using improper criteria for establishing value. When the court finally permitted the condemnee to testify as to his value estimate of $132,000.00, that estimate was based on sales of real estate in the area, on reconstruction cost, on

rental income and on value of the machinery and equipment, and, although a condemnee may not testify to particular costs as independent and distinct items of damage, he may testify as to his valuation and to the facts and data he considered in making such valuation. *Scavo v. Commercial of Pennsylvania, Department of Highways,* 439 Pa. 233, 266 A. 2d 759 (1970). The lower court made no error in admitting this testimony.

The condemnor argues that the lower court did not properly instruct the jury as to the Assembled Industrial Plant Doctrine or as to the Assembled Economic Unit Doctrine. Specifically, it contends that the jury should have been instructed to consider the machinery, equipment and fixtures only to the extent that they enhanced the value of the real estate. We cannot agree. The charge properly set out the elements for the jury to consider, and was in pertinent part very similar to the charge approved by this Court in *North Side Deposit Bank, supra.*

Finally, the condemnor contends that the verdicts were excessive and against the weight of the evidence, stating that the jury's award greatly exceeded the viewer's award and that the condemnor expert witness gave detailed grounds on which to base his estimate while the condemnee's experts gave either no basis or an improper basis for their estimates. As to the latter claim, it is clear that the jury heard all of the witnesses and apparently found the opposing testimony equally convincing, for its award was approximately equidistant between the two estimates. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A. 2d 516, 518 (1970), held that: "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. . . ." This verdict does not shock our sense of justice, but seems

reasonable under the circumstances. As to the fact that the Board of Viewers' award was less than the jury's award, this is an important factor to be considered when a new trial is requested, but it is not controlling. *Boring v. Metropolitan Edison Company,* 435 Pa. 513, 257 A. 2d 565 (1969). Here, while the jury's award is approximately 45% higher than the award of the viewers, we cannot say, given the mass of conflicting testimony, that this is an unreasonable disparity.

The condemnor has raised a number of additional issues concerning testimony and the court's charge, which we also find to be without merit. And we find nothing in the condemnor's arguments as a whole which we think would warrant our reversing the judgment of the court below and granting a new trial.

We, therefore, dismiss the condemnor's appeal and affirm the decision of the court below.