Dacar Chemical Products Company *v.*
Redevelopment Authority.

Argued November 2, 1972, before Judges KRAMER,
ROGERS and BLATT, sitting as a panel of three.

*Aaron Cohen,* with him *Sylvan Libson,* for appellant.

*Thomas J. Dempsey,* for appellee.

OPINION BY JUDGE ROGERS, December 8, 1972:

Final judgment in this eminent domain case was entered below on February 11, 1972 and this appeal was taken on March 20, 1972. The jury's verdict had been molded and remolded by the trial judge and a premature appeal filed and withdrawn. These events no doubt contributed to the appellant's failure to file timely appeal. The matter is, however, jurisdictional and we must and do hereby quash the appeal.

We have nonetheless considered the questions raised by the appellant because the case on the law has special, if principally historical, interest.

The appellant Authority effected a total condemnation of the appellee's industrial plant. Some equipment and machinery could be and was removed by the appellee to another plant at substantial expense. Other equipment could not be moved.

The Eminent Domain Code, Act of June 22, 1964, P. L. 84, 26 P.S. §1-101 et seq., was held not to apply to this case. *Dacar Chemical Products Company v. Allegheny County Redevelopment Authority,* 425 Pa. 343, 228 A. 2d 778 (1967). As a result, there could be no payment to condemnee of its expense in moving and relocating machinery, equipment and personal property, as provided by the Code. This was, therefore, a pre-Code Assembled Industrial Plant Doctrine case and not an Assembled Economic Unit case under the Code. As *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970), teaches, because the Code provides for removal, transportation and reinstallation

compensation, a condemnation under the Code is merely an enforced relocation of the enterprise, not the enforced *sale* of the business which Judge CARDOZO found to be the central reason for the application of the Assembled Industrial Plant Doctrine to eminent domain cases.[1] Therefore, under the Code, if all or most of the machinery, equipment and fixtures can be removed without significant injury and a comparable unit established elsewhere, then only that which is not removable is compensable as part of the plant. If a comparable unit cannot be established for that reason, or if, even where the machinery, equipment and fixtures are removable without significant injury, a unique building is required such that no other building within a reasonable distance is adaptable to the functioning of the business, then the Assembled Economic Unit Doctrine will apply and all machinery, equipment and fixtures, whether loose or attached, will be considered part of the realty and compensable.

Because, as we have noted, compensation for removal of machinery, equipment and fixtures was not available before the adoption of the Code, it was not then appropriate to apply the following tests: (1) whether all or most of the machinery, equipment and fixtures could be moved without significant injury, and a comparable unit established elsewhere, or (2) whether, if the machinery, equipment and fixtures could be moved, the building was unique and another not available within a reasonable distance. Under pre-Code law, the sole test was whether the machinery, equipment and fixtures in question were placed in the establishment[2] for permanent and necessary use in the

---

[1] *Jackson v. State of New York*, 213 N.Y. 34, 106 N.E. 758 (1914).

[2] The Assembled Industrial Plant Doctrine is not, as is the Assembled Economic Unit Doctrine, applied to commercial establishments.

industrial operation. If they were, then regardless of the practicality of their removal or whether fast or loose, they were compensable as part of the realty. *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A. 2d 869 (1967). Dacar Chemical Products Company clearly met this test. The fact that it moved some of the equipment to a new location was not controlling[3] nor was the fact that it engaged in a similar but reduced operation at a new location.

The appellant's complaint concerning the court's molding of the verdict to provide the proper amount of compensation for delay is without merit. The jury under proper instructions decided that the condemnee was entitled to compensation on this account. It obviously and understandably erred in its computation and the court properly corrected its mathematics based upon undisputed facts of record.

---

[3] The severed value of this property was put in evidence as a credit against the award.