## Wasserman Petition

*Richard D. Maloned,* for petitioners.
*Lewis Katz,* for Redevelopment Authority.

HIRSH, *J.,* April 15, 1975—On August 10, 1973, Albert Wasserman ("petitioner") filed a petition for the appointment of a board of view to "determine the just compensation your Petitioner is entitled to by reason of his displacement from Premises." Thereafter, on August 22, 1973, said petition was granted and three members were appointed as a board of view. Subsequently, the Redevelopment Authority of the City of Philadelphia filed preliminary objections on September 13, 1973, alleging, inter alia, that petitioner has neither exhausted nor availed himself of the administrative procedure for the determination of special damages for displacement pursuant to article VI-A of the Eminent Domain Code of June 22, 1964, Sp. Sess., P.L. 84, 26 P.S. §§1-601-A, et seq., and all right, title and interest in the premises, including all improvements and appurtenances thereto, and including all machinery, equipment and trade fixtures forming part of the real estate under the Assembled Economic Unit Doctrine, was conveyed to respondent by petitioner on July 17, 1971, pursuant to an offer of sale of land executed on May 11, 1971. Petitioner, on September 24, 1973, filed his answer to respondent's preliminary objections. This court is compelled to sustain respondent's preliminary objections for reasons which follow.

Exhibit "A" of respondent's petition indicates that, pursuant to an offer of sale of land, petitioner has been fully compensated for all machinery, equipment and fixtures forming part of the real estate. However, petitioner contends that, as a result of said displacement, he sustained business dislocation damages and machinery and equipment damage in addition to other damages provided for in the Eminent Domain Code. Petitioner admits that a declaration of taking has been filed and that a board of view has been appointed. Therefore, the present petition for the appointment of a board of view is inoperative as a matter of law as required by section 502(e) of the Eminent Domain Code, 26 P.S. §1-502(e).

The Eminent Domain Code provides an administrative procedure for processing claims under article VI-A and, until petitioner follows said remedy, he is not entitled to judicial relief. Section 604-A of the Eminent Domain Code, 26 P.S. §1-604-A, provides as follows:

"Section 604-A. Issuance of regulations to implement this article

"The Attorney General shall promulgate such rules and regulations as may be necessary to assure:

"(1) That the payments authorized by this article shall be made in a manner which is fair and reasonable, and as uniform as practicable;

"(2) That a displaced person who makes proper application for a payment authorized for such person by this article shall be paid promptly after a move or, in hardship cases, be paid in advance;

"(3) That any person aggrieved by a determination as to eligibility for a payment authorized by this article, or the amount of a payment, may elect to

have his application reviewed by the head of the acquiring agency or his designee;

"(4) That each displaced person shall receive the maximum payments authorized by this article; and,

"(5) That each acquiring agency may obtain the maximum Federal reimbursement for relocation payment and assistance costs authorized by any Federal Law.": Added 1971, Dec. 29, P.L. 644, No. 169, sec. 8.

Initially, petitioner should have filed his application for special damages for displacement with the Relocation Department of respondent. After being reviewed, petitioner would have been notified of the determination of said department, and then if he wanted to appeal the action taken by the department, he could proceed in compliance with section 101.1(c) of the Uniform Relocation Assistance Regulations, which provides as follows:

"§101.1 These Regulations are promulgated for the purpose of insuring that

". . .

"(c) Any person aggrieved by a determination as to eligibility for a payment authorized by Code Article VI-A, or the amount of a payment, may elect to have his application reviewed by the head of the acquiring agency or his designee."

In addition, section 111 of the Attorney General's Regulations on Uniform Relocation Assistance (promulgated to implement article VI-A of the Eminent Domain Code, as amended, effective July 15, 1972) provides the grievance procedure to be used by the displaced person within the organization of the acquiring agency.

Moreover, section 101.2 sets forth that the procedures pursuant to these regulations are intended to

be the means for the processing of article VI-A claims. Said regulation provides as follows:

"§101.2. Except as provided in §108.1(a) and (b), damages for dislocation are recoverable only under Code Article VI-A and these Regulations, which, together, are intended to implement the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646, Damages are not recoverable under the Federal Uniform Relocation Act."

As previously stated, petitioner has been fully compensated for the premises and for all appurtenances and improvements thereto, including any machinery, equipment and fixtures deemed to be part of the real estate under the Assembled Economic Unit Doctrine.

In Singer v. Oil City Redevelopment Authority, 437 Pa. 55, 261 A. 2d 594 (1970), the court abolished the distinction between industrial and other business establishments in determining whether machinery and equipment were condemned as part of the realty. It held that an Assembled Economic Unit Doctrine applies for all business condemnees. The doctrine is as follows:

1. ". . . when such a portion of the assembled economic unit is not removable from the condemned property that that which is so removable will not constitute a comparable economic unit in a new location, then all machinery, equipment and fixtures, whether loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty under the Assembled Economic Unit Doctrine, so as to entitle the condemnee to compensation therefor under §§601, 602 and 603(3).": 437 Pa. 55, 66-7.

2. ". . . where all or most of the machinery, equipment and fixtures of the economic unit are removable *without significant injury to them*, such that the economic unit is susceptible of continuance, as a comparable economic unit, in a new location, *only* those items of machinery, equipment and fixtures *not removable* from the condemned structure are to be considered a part of the realty taken by the condemnor.": 437 Pa. 55, 65-6.

In Penn Foods, Inc. Condemnation, 50 D. & C. 2d 99 (1970), the court held that: "In order to apply the assembled industrial plant doctrine, it is necessary that the equipment and machinery remain on the premises. The machinery and equipment cannot be considered as forming a part of the realty unless, in fact, it is on the premises at the time they are vacated."

In Redevelopment Authority v. Yee Kai Teung, 5 Pa. Commonwealth Ct. 65 (1972), condemnee drew most of his business from hotels and a YMCA in the immediate vicinity of his laundry. Unsuccessful attempts had been made to find an alternative site within a reasonable distance. The court stated, at page 70:

"Even if, therefore, the condemnee could remove enough of his equipment to permit relocation, he could not possibly relocate without moving to such a great distance as to make the maintenance of his economic position impossible. This building, therefore, was unique in the area for the purpose to be served, and the Assembled Economic Unit Doctrine would be properly applied in ascertaining just compensation for the condemnee."

In consideration of all the foregoing, this court is convinced that petitioner has received the proper

payments under the Assembled Economic Unit Doctrine, and an offer has been made for relocation damage by the Redevelopment Authority; however, petitioner failed to proceed in compliance with article VI-A of the code covering displacement damages and, therefore, did not exhaust his administrative procedure thereunder.

Accordingly, it is, therefore, ordered and decreed that the preliminary objections of the Redevelopment Authority of the City of Philadelphia are sustained; the petition of Albert Wasserman, t/a Shar-Beth Cut Rate, for appointment of a board of view is denied; all without prejudice to petitioner to pursue his proper administrative remedy.