Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Frank Seltzer and Atkin Seltzer, t/a Seltzer Coal Company, Appellees.

Argued February 3, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*David A. Johnston, Jr.,* Assistant Attorney General, with him *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

*John H. Thomas,* for appellee.

OPINION BY JUDGE ROGERS, March 26, 1975:

On December 1, 1965, the Commonwealth of Pennsylvania, Department of Highways (now Department of Transportation) filed a Declaration of Taking by which, in connection with a highway construction project, it took 27.52 acres of a 31.86 tract of land in Schuylkill County owned by Frank and Atkin Seltzer, brothers trading as Seltzer Coal Company. The property had for many years been used by the Seltzers in the conduct of a coal breaking, processing, and sales business. A coal breaker, auxiliary buildings, machinery, equipment, fixtures and other chattels used in the operation were located on the tract. In addition, more than 494,000 cubic yards (almost 414,000 gross tons) of culm and silt, the residue of the coal processing activities containing 34.54% recoverable coal, had accumulated on the land. Soon after the filing of the Declaration of Taking, the Department asked the condemnees whether they intended to remove the accumulated culm and silt, and told them that if they did so intend they must do so within sixty days. Frank Seltzer replied for the brothers in writing that they would not

remove the "coal fines, and therefore they do not consider this material to be private property." At the trial below he testified that the condemnees could not move this quantity of material in sixty days. Thereafter, the Department engaged a contractor to remove and deposit the materials on other land. This took eight months.

A Board of viewers awarded condemnees total compensation of $900,000, broken down as $247,000 for land, $153,000 for the plant and other improvements, and $500,000 for "silt dams and other fine materials." The Department appealed the viewers' report to the Schuylkill County Court of Common Pleas.

Obviously, the parties had and have no disagreement over the compensability, as distinguished from the market value, of the land and buildings taken. They agreed that the machinery, equipment and fixtures located in the breaker and recorded on a list admitted into evidence and used by all valuation witnesses should be considered in the award of damages. They agreed that certain other items, such as trucks, a bulldozer, a shovel and certain machinery removed by the condemnees from one of the auxiliary buildings were not compensable.

The parties were and are in disagreement over the accumulation of culm and silt. The Commonwealth's contention at the trial was and still is that this material was mere personal property of the condemnees not taken by it in the condemnation. It requested moreover that the jury be instructed to determine whether the condemnees by declining to remove the 436,000 cubic yards of culm and silt had abandoned it and thus lost any interest therein for which they could be compensated. The Commonwealth nevertheless adduced expert opinion evidence, based on the cost of recovery of the remaining coal in the material, that the culm and silt in place was in fact without value. The condemnees urged and still urge that the case was one for the application of the Assembled Economic Unit Doctrine and that the culm and silt was

as a matter of law a fixture, whether fast or loose, for which they were, under that Doctrine, entitled to compensation. The condemnees adduced opinion evidence of witnesses of the value of the culm and silt in place ranging from $760,000 to $877,000.

The trial judge instructed the jury that the Assembled Economic Unit Doctrine was indeed to be applied, that the culm and silt should be considered by them as part of the economic unit and that the condemnees were entitled to compensation for this material if found that it had value. Unfortunately, the trial judge, acceding to the Commonwealth's request, also charged the jury that if it believed that, by the condemnees' failure to remove the culm and silt at the Department's suggestion, the condemnees had voluntarily relinquished their ownership in and thus had abandoned the material, there could be no award for its taking.

Each of the condemnees' valuation witnesses testified to values of the property taken ranging from $1,234,000 to $1,300,000 including, of course, the $760,000 to $877,000 assigned to the culm and silt. The Commonwealth's witnesses testified, as noted, that the culm and silt had no value and that the property taken had values ranging from a low of $111,000 to a high of $120,000. The jury returned a verdict of $150,000. The condemnees moved for a new trial which the court below granted on the ground that the trial judge erred in charging that the jury might find that the condemnees had abandoned the culm and silt, and that, if it so found, any value it might also find that this material had, could not be considered in its award. The Commonwealth has appealed the grant of a new trial.

A brief history of the law with respect to machinery, equipment and fixtures seems appropriate. Prior to the adoption of the Eminent Domain Code, Act of June 22, 1964, Special Sess. P.L. 84, *as amended,* 26 P.S. §1-201 et seq., machinery, equipment and fixtures attached to the

land and thereby a part of the land were compensable in condemnation. Loose machinery, equipment and fixtures ordinarily were not compensable. In *Gottus v. Allegheny County Redevelopment Authority*, 425 Pa. 584, 229 A.2d 869 (1967), however, our Supreme Court held that the Assembled Industrial Plant Doctrine, which originated in the field of mortgage law and later extended to local tax assessment cases, was also to be applied in eminent domain cases. The doctrine was that machinery, equipment and fixtures in an industrial plant which are vital to the business operation and a permanent installation therein, whether fast or loose, were to be considered realty.

Section 603(3) of the Eminent Domain Code, 26 P.S. §1-603(3) (Supp. 1974-1975) provides that machinery, equipment and fixtures *forming part of the real estate* must be taken into consideration in the determination of the fair market value of property interests taken. The Joint State Government Commission which developed and proposed the Code believed that this provision was "in accord with existing law since it assumes that the machinery, equipment and fixtures are part of the real property taken." By former Section 608 of the Code, however, a new element was added by the provision of reasonable expenses not exceeding $25,000 for the removal of machinery, equipment and fixtures, not forming part of the realty.[1] There remained, however, under the Code the question of the compensability of loose machinery, equipment and fixtures in a business operation so affected by a condemnation that such machinery, equipment and fixtures, although their removal expense was compensable, were not useful in a new establishment. Our Supreme Court in *Singer v. Oil City Redevelopment Authority;*

---

1. Section 608 was repealed by the Act of December 29, 1971, P.L. No. 169, and its provision replaced by Section 601-A, 26 P.S. §1-601A (Supp. 1974-1975) which provides compensation for removal expenses unlimited in amount.

437 Pa. 55, 261 A.2d 594 (1970) supplied the remedy in such circumstances by establishing in the law of Pennsylvania the Assembled Economic Unit Doctrine, applicable to commercial as well as industrial business. The portion of the Doctrine here pertinent is: that "when such a portion of the assembled economic unit is not removable from the condemned property that that which is so removable will not constitute a comparable economic unit in a new location, then *all* machinery, equipment and fixtures, whether loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty." (Emphasis in original.) 437 Pa. at 66-67, 261 A.2d at 600. The Court declared, conversely, that "where all or most of the machinery, equipment and fixtures of the economic unit are removable without significant injury to them, such that the economic unit is susceptible of continuance, as a comparable economic unit, in a new location, *only* those items of machinery, equipment and fixtures *not removable* from the condemned [property] are to be considered a part of the realty taken by the condemnor." (Emphasis in original.) 437 Pa. at 65, 261 A.2d at 600.

It is clear to us on the facts here that the Assembled Economic Unit Doctrine is applicable. The machinery, equipment and fixtures which the parties listed and agreed were taken and not removable without significant injury, included everything in the breaker, the pump house, and the scale house, such being feeders, conveyers, shakers, rolls, settling tanks, pumps, boilers, chain hoists, scales, and coal bins. The trucks, bulldozer and other articles taken by the condemnees would plainly not constitute a coal breaking and processing plant elsewhere. The Commonwealth indeed does not dispute that the Doctrine applies to the facts of this case generally; it argues, rather, that the culm and silt was personal property, not machinery, equipment or fixtures, and that if it had any value such value was merely as inventory. It is

not helpful, as the Commonwealth urged and the trial judge instructed the jury, to begin with a determination that an article for which compensation is sought in a condemnation case, is personal property. All fixtures are or were at one time personal property. The issue is whether they do or do not form part of the real estate under Section 603 (3) of the Code or whether, where the Assembled Economic Unit Doctrine applies, whether loose or attached, they are vital to the economic unit and a permanent installation therein. Nor may the issue of compensability be determined by labeling the clum and silt inventory. As the result of this condemnation, it was required to be removed. What are the consequences of that requirement? It is undisputed that absent the presence of a breaker in which it may be reprocessed, the culm and silt has no value. The cost of its removal to another breaker, together with the cost of reprocessing, would, it is clear, render it valueless for reprocessing elsewhere. If, as the condemnees assert, it has value in place, who should bear the loss of the destruction of that value? As one authority, whose statement we approve, has written:

> "The above cases suggest a new approach to the determination of whether items are, or are not, fixtures, and hence are, or are not, condemned. In the past, the courts engrafted upon the consequences of an eminent domain proceeding the property rule of fixtures. As seen, the effort to define with any precision whether an item is a fixture was not notably successful in real property law. The policy considerations underlying the fixture problem in real property law and eminent domain law are not the same. The issue in eminent domain cases is who pays. The issue in real property cases is who wins. The cases cited indicate a growing judicial recognition that the dominant issue in eminent domain cases is who bears the economic consequences of the condemnation. An effort, therefore, is being made to introduce evidence

bearing upon this issue. Instead of 'annexation,' 'intent' and 'adaptability' being controlling, the controlling factor now becomes the difference between the in-place value and the removal and reinstallation expenses." Snitzer, *Valuation and Condemnation Problems Involving Trade Fixtures,* 16 VILL. L. REV. 467, 484-485 (1971).

We have no hesitancy in declaring in these circumstances that the onus for the loss of value of the culm and silt, if any, should fall upon the condemnor and in declaring that this material, which it took the Commonwealth eight months to remove, was a fixture of the condemnees' coal processing economic unit, whether considered loose or attached. Indeed, if only the land on which the culm and silt rested had been taken, we would have no difficulty in concluding that the culm and silt was a fixture of the enterprise. Analogously, in *In re Slum Clearance, City of Detroit,* 332 Mich. 485, 52 N.W. 2d 195 (1952) it was, we believe properly, held that chemical solutions kept in tanks, which solutions could be moved only at an expense greater than their value in place, were trade fixtures "constructively" attached to the freehold.

The taking of the culm and silt being compensable, it was error to charge the jury that it might find that the condemnees relinquished their interest in this property and hence lost their right to damages because they declined to remove the material within sixty days, as the Department suggested. This is especially so in view of Frank Seltzer's statement in his written response to the Department that the culm and silt was not "private" property. Whether Mr. Seltzer meant that the condemnees considered the culm and silt to be, after the condemnation, public property of the Commonwealth or real estate as contrasted with personal property, his answer indicated something other than a relinquishment of the property or of the right to damages. Further, if, as we have

held, the property was taken on December 1, 1965, it was not thereafter subject to abandonment by its former owners. Moreover, Section 607 of the Code, 26 P.S. §1-607 (Supp. 1974-1975) authorizes the condemnor to accord the condemnee an election of removing machinery, equipment or fixtures forming part of the real estate, and further provides that damages shall be reduced by the fair market value of the removed property severed from the real estate. A rule which would permit the jury to determine whether the condemnee's election not to remove such property evidenced an abandonment of his erstwhile interest therein and his right to damages for its taking would make of a statute intended to be beneficial to both parties a trap for the condemnee.

The Commonwealth's argument, based on the several valuation figures presented to the jury, that the verdict indicates that the jury considered the culm and silt in the award of damages but found them to be valueless, is without merit. As good an argument could be made on the same evidence that the jury found that the condemnees had abandoned this material.

The order below granting a new trial is affirmed and the record remanded for this purpose.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I do not hold the view that the Assembled Economic Unit Doctrine as pronounced in *Singer v. Oil City Redevelopment Authority*, 437 Pa. 55, 261 A. 2d 594 (1970), has application to the culm and silt situate on the condemned property on the date the declaration of taking was filed.

Although I deem the lower court's charge to have been in error, relative to the items of culm and silt, the jury verdict, following a view, persuades me that it was harmless error in this case. Therefore, I would reverse the lower court's grant of a new trial.