Redevelopment Authority of the City of Johnstown, Appellant, *v.* Robert A. Tross and Edith V. Tross and Robert A. Tross, Jr. and Virginia Tross, Executors of the Estate of Edith V. Tross, Appellees.

Argued May 6, 1975, before President Judge BOW-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Gilbert E. Caroff,* for appellant.

*J. Phillips Saylor,* with him *Spence, Custer, Saylor, Wolfe & Rose,* for appellees.

OPINION BY JUDGE MENCER, July 1, 1975:

This very interesting appeal is a sequel to *Tross v. Johnstown Redevelopment Authority,* 8 Pa. Commonwealth Ct. 605, 302 A. 2d 883 (1973), wherein we reversed the Court of Common Pleas of Cambria County's grant of a new trial in this eminent domain case.

The appellees, Robert A. Tross, Jr., and Virginia Tross, executors of the estate of Edith V. Tross, deceased, and Robert A. Tross were the owners of a property improved with a four-story building and located at the intersection of Main and Market Streets in the City of Johnstown. One side of the first floor of this building was occupied by a long-term tenant, Coleman Diners, Inc. (Coleman). It contained numerous items ordinarily used in the restaurant business, such as coolers, ranges, tables, and counters, many of which were specifically manufactured to fit into the spaces provided for them in the renovating of the diner.

On April 1, 1968, the Redevelopment Authority of the City of Johnstown (Authority) filed a declaration of taking whereby it acquired the interests both of the appellees and of Coleman in the property. Negotiations to arrive at voluntary settlements were unsuccessful. The Authority then offered to pay the appellees $115,000 and the tenant Coleman $55,185. The Authority requested a receipt and stipulation to be executed by the condemnees relative to receipt of the money being paid. The stipulation executed in September 1968 contained two provisions that are of significance to this appeal:

(1) "WHEREAS, Authority seeks assurance that any funds it advances to Owner and Tenant will ultimately be applied to the *gross amount of damages which Authority becomes liable* for as a result of an award by a Board of Viewers, a jury on appeal or by settlement, regardless of the apportionment determined by viewers or the court." (Emphasis supplied.)

(2) "Owner and Tenant acknowledge receipt of $155,000.00[1] from Authority and agree that said sum of $155,000.00 shall be deducted from the total amount of compensation ultimately due *both Owner and Tenant,* regardless of the ratio or apportionment of such compensation as determined by a Board of Viewers, the common pleas court or jury, or by stipulation, and regardless of whether the compensation is due for the taking of real or personal property or the removal or relocation of machinery, equipment and fixtures." (Emphasis and footnote supplied.)

Upon trial, Coleman was nonsuited, on motion of the Authority, as a result of failing to place its lease in evidence and its failure to present testimony relative to the value of its leasehold or with respect to any special damages to which it was entitled. Thereafter, the jury returned a verdict in favor of the appellees in the amount of $140,000. Appellees now demand the difference between $115,000 which the Authority had previously paid them and the $140,000 verdict. The Authority contends no further payment is due the appellees because of the provisions in the stipulations that the $170,185 paid to appellees and Coleman should apply to the "gross amount of damages which Authority becomes liable for as a result of an award by . . . a jury." The Authority asserts

---

1. A "Supplementary Receipt and Stipulation" was executed by the parties on May 26, 1969. It was stated therein that the Authority had paid the owner the sum of $115,000 and the tenant the sum of $55,185.

that it has become liable by the jury verdict for damages in the gross amount of $140,000 as a result of the taking of the property in question and therefore the $170,185 paid by it to owners and tenant is, in accord with the stipulations, more than payment in full of the verdict. The court below, by a divided vote, agreed with the appellees' contention and, by order dated August 16, 1974, discharged a rule to show cause why the judgment entered on the verdict should not be satisfied. This appeal followed and we reverse and remand.

Prior to a discussion of this issue, we should note that following the execution of the stipulations and prior to the jury trial our Supreme Court decided *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A. 2d 594 (1970). In *Singer,* it was held that where machinery, equipment, fixtures of the economic unit on the condemned property are not removable without significant injury to them so that the economic unit is not susceptible of continuance, as a comparable economic unit, in a new location, then all machinery, equipment, and fixtures, whether loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty. This formulation has been designated as the Assembled Economic Unit Doctrine.

The cardinal rule in construing an agreement is to ascertain the intention of the parties at the time of its making. *Robert F. Felte, Inc. v. White,* 451 Pa. 137, 302 A. 2d 347 (1973). Our examination of the record results in our concluding that the parties intended that the $170,185 advanced to appellees and Coleman would be applied or set off against the total amount of damages which a jury would determine to be the Authority's liability.

It is obvious from the record, including pretrail conference notes, the colloquy at the point in the trial that the tenant Coleman was nonsuited, and the judge's

charge, that the trial was conducted upon the Assembled Economic Unit Doctrine and that the verdict was foundationed thereon.[2] This conclusion was succinctly stated by the trial judge and appellees' counsel in the following colloquy:

"BY THE COURT:

The court will permit the merging of these interests [owners' and tenant's] for this purpose. It is my understanding that if a verdict is reached the parties [owners and tenant] will agree on the pro-rata distribution of that verdict.

"BY MR. WILENZIK:

Among themselves they will distribute that verdict. It is our position that the Redevelopment Authority will pay only one amount out."

Subsequently, the record discloses that counsel for the tenant Coleman objected to the Authority's motion for a compulsory nonsuit against Coleman unless the Assembled Economic Unit Doctrine were to be applied and thereafter the trial judge instructed the jury on this doctrine and the case was so submitted to the jury.

Therefore, we determine that the jury verdict included compensation for the tenant's equipment and personal property *and* the owners' building, as permitted by the Assembled Economic Unit Doctrine. True, the amount of the verdict was undoubtedly less than any of the parties had anticipated, was $61,587.50 less than that

2. The majority opinion for the lower court contains this significant paragraph:

"At the pretrial conference held before this Court on June 22, 1970, both counsel for the owner and for the tenant announced that they would seek the application at the trial before a jury of the Assembled Economic Unit Doctrine and that the machinery, equipment and improvements pertaining to the diner portion of the realty were part of the building and should be included in the real estate valuation. They also announced that they would merge their interests and ask for one award."

awarded by the Board of Viewers, and was $30,185 less than the Authority paid voluntarily as estimated just compensation. However, this development is not controlling here since we are called upon to interpret the stipulation and to ascertain the intention of the parties at the time they entered into the stipulation.

Certainly they did not have in mind the application of the Assembled Economic Unit Doctrine which was pronounced subsequently to the stipulation agreement. Surely they contemplated and intended that eventually the owners and the tenant would receive an award for their respective damages and that the money which the Authority was paying voluntarily to the owners and the tenant would be applied as partial payment of the award. The eventual developments that the Assembled Economic Unit Doctrine permitted a single award to the owners and that, as trial strategy, the tenant chose not to present evidence of its remaining leasehold or its special damages, which choice resulted in a nonsuit as to the tenant and insured that any award would be in the name of the owners only, could not vary the original intention that the Authority's initial voluntary payments of $170,185 would be credited against the eventual amount for which the Authority would be found liable both as to the owners and as to the tenant. Utilizing the Assembled Economic Unit Doctrine, as was done here with full awareness and approval of the owners and tenant, the $140,000 jury verdict was the "gross amount of damages which Authority [became] liable for" both to the owners and to the tenant.

If the contrary position, espoused by the appellees and adopted by a majority of the lower court, would be accepted, then the logical result would be that the Authority would not be entitled to any setoff or credit against the $140,000 verdict because the stipulation agreement entered into upon the owners and tenant's receipt of $170,185 limited any credit to the one situation

where a verdict was in favor of both owner and tenant, which did not happen in this case. Consequently, the Authority would logically owe appellees $140,000 to satisfy the verdict since the verdict was in favor of the owners only, and stipulation and previous payment to appellees of $115,000 would not be relevant. The lower court did not so conclude but held that the Authority was entitled to "deduct from the verdict of $140,000 the $115,000 it had previously paid to the owner."

We adopt and close with the apt observations made by Judge McDonald in his dissenting opinion: "[T]he majority opinion has misinterpreted the import of the verdict rendered under an instruction on the Assembled Economic Unit Doctrine. This verdict contemplated damages to the tenant whether or not a party to it. That this was intended is evident by the position of the parties at the pretrial conference, throughout the trial and in the instructions of the Trial Judge. To now say the verdict did not reflect this is to overlook the trial record and read into the unambiguous Receipt and Stipulation something which is not there."

Order reversed and case remanded to the Court of Common Pleas of Cambria County for entry of an appriate order directing Robert A. Tross, for himself, and Robert A. Tross, Jr., and Virginia Tross,[3] as executors of the estate of Edith V. Tross, deceased, to satisfy of record a judgment in their favor in the principal amount of $140,000 entered in the records of Cambria County against the Redevelopment Authority of the City of Johnstown.

---

3. Although the caption of this case does not so reflect, it would appear from both briefs filed in this appeal that Virginia Tross is now Virginia Tross Harvey.