The Redevelopment Authority of the City of Philadelphia, Appellant *v.* Grover Driscoll, a/k/a Grover Driskell, Appellee.

Argued April 2, 1979, before Judges WILKINSON, JR., BLATT and DISALLE, sitting as a panel of three.

*Lawrence S. Rosenwald,* with him *Rosenwald & Pollack,* for appellant.

*Herbert J. Hutton,* for appellee.

OPINION BY JUDGE DISALLE, August 22, 1979:

Presently before us is an appeal from a decision of the Court of Common Pleas of Philadelphia County awarding condemnation damages pursuant to the provisions of the Eminent Domain Code (Code), Act

of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-101 et seq.

On May 1, 1967, the Redevelopment Authority of the City of Philadelphia (Authority) condemned a property which Grover Driscoll (Condemnee) leased and on which he operated a taproom. Condemnee sought, *inter alia*, compensation for the loss in value of his liquor license and of the machinery, equipment and fixtures (hereinafter referred to as MEF) used in his business. The lower court awarded $20,000 for the liquor license claim, $12,000 on the MEF claim, and delay compensation for the delayed payment thereof. The award of delay compensation was to be calculated from the date of the taking notwithstanding the fact that Condemnee remained in possession of the premises and paid rent thereon through 1970.

The Authority raises three questions on appeal: (1) whether the court erred in awarding $20,000 for the loss in value of the liquor license; (2) whether the court erred in awarding delay compensation to a tenant who remained in possession of the condemned property *and* who continued to pay rent therefor; and, (3) whether the court improperly applied the Assembled Economic Unit Doctrine in valuing Condemnee's MEF.

We begin our consideration of the first question by noting that there is no doubt that a liquor license is a compensable property interest within the meaning of the Code. *Redevelopment Authority of the City of Philadelphia v. Lieberman*, 461 Pa. 208, 336 A.2d 249 (1975). The Authority contends, however, that the award in this case of $20,000 for the damage to the liquor license actually compensated Condemnee for his loss of business and patronage, and that this was improper. Rather, the Authority argues that the liquor license should be valued at what it would be worth *detached* from Condemnee's business.

Our Court recently had occasion to affirm the award of $40,000 to a condemnee for damage to his liquor license under circumstances similar to those in the present case. *Redevelopment Authority of the City of Philadelphia v. Royal Janet Corp.*, 42 Pa. Commonwealth Ct. 546, 401 A.2d 17 (1979). This award expressly reflected the value of the license *in use* by the condemnee at the time of the condemnation. Having reviewed the record in the present matter, we believe that the lower court's award here of $20,000 for demage to Condemnee's liquor license obviously comports with our treatment of the matter in *Royal Janet Corp.*, and is sanctioned thereby.

Turning to the second issue, the Authority contends that Section 611 of the Code, 26 P.S. §1-611,[1]

---

[1] This Section provides as follows:

The condemnee shall not be entitled to compensation for delay in payment during the period he remains in possession after the condemnation, nor during such period shall a condemnor be entitled to rent or other charges for use and occupancy of the condemned property by the condemnee. Compensation for delay in payment shall, however, be paid at the rate of six per cent per annum from the date of relinquishment of possession of the condemned property by the condemnee, or if the condemnation is such that possession is not required to effectuate it, then delay compensation shall be paid from the date of condemnation: Provided, however, That no compensation for delay shall be payable with respects to funds paid on account, or by deposit in court, after the date of such payment or deposit. Compensation for delay shall not be included by the viewers or the court or jury on appeal as part of the award or verdict, but shall at the time of payment of the award of judgment be calculated as above and added thereto. There shall be no further or additional payment of interest on the award or verdict.

The accompanying comment of the Joint State Government Commission pertinently provides as follows:

The first sentence of this section is included to make it clear that while the condemnee is in possession of the

precludes the award of delay damages at least during that period from 1967-1970 when Condemnee remained in possession of the subject property.[2] The problem is, however, that Condemnee also continued to pay rent to the Authority during the period he remained in possession after the condemnation. Since the comment to Section 611 makes it clear that the reason a condemnee is not entitled to delay damages while he remains in possession relates to the fact that he is benefiting at the condemnor's expense (*i.e.*, the *non*-payment of rent, in a sense, offsets delay compensation), may the condemnee's right to delay compensation be reactivated if, by agreement of the parties, he continues to pay rent to the condemnor during his continued occupation of the premises?

---

condemned property, he does not get delay compensation but the condemnor is not entitled to rent or other charges for use and occupancy. The reason for this is that while the condemnee is in possession, the condemnee is not building up damages for delay and the condemnor is not accruing liability for delay damages. Consequently, the delay compensation and the rent, in a sense, offset each other.

[2] The Authority's threshold argument regarding this issue was that no compensation *at all* should be awarded for delay as to the liquor license award. The Authority argues that since Condemnee voluntarily chose to surrender the liquor license to the Liquor Control Board (LCB) the Authority will not benefit from the use thereof and that the payment of delay compensation to Condemnee, therefore, would be inequitable. Suffice it to say that the condemnee in *Lieberman, supra*, also surrendered his liquor license to the LCB rather than conveying it to the city. Obviously, this fact in no way altered the Court's conclusion that the liquor license was a compensable property interest within the meaning of the Code. Further, since the purpose of delay compensation is to compensate a *condemnee* for the condemnor's tardy payment of compensation due condemnee for damage to his property interests, the fact that a *condemnor* may not be able to benefit from some element of the property interest acquired is of utterly no moment to the question of condemnee's entitlement to delay compensation.

Our Court has had occasion to state that "Section 611 . . . *clearly* and *unequivocally* denies a condemnee any right to delay compensation while he remains in possession." *Govatos v. Redevelopment Authority of the County of Montgomery,* 11 Pa. Commonwealth Ct. 529, 533, 314 A.2d 536, 538 (1974) (emphasis supplied); *see also, Hassett v. Department of Transportation,* 34 Pa. Commonwealth Ct. 368, 384 A.2d 594 (1978). In a similar vein, Edward Snitzer, author of a leading treatise on eminent domain, characterizes Section 611 as creating a "total prohibition" against the payment of delay compensation "applicable only when the condemnee remains in possession." Snitzer, *Pennsylvania Eminent Domain,* §611-2.1 (1965) (hereinafter Snitzer). The clear and unambiguous language of Section 611, therefore, leaves no doubt that a tenant who remains in possession is not entitled to delay compensation during the period of his continued possession, notwithstanding the fact that he continued to pay rent to the condemnor. We hold, therefore, that the lower court erred in awarding delay compensation to Condemnee for the period he remained in possession after the property was condemned and that, pursuant to Section 611, Condemnee is entitled, as a matter of law, to receive delay compensation calculated from the date he relinquished possession of the condemned property.

Our resolution of the final issue is facilitated by the Supreme Court's decision in *Singer v. Oil City Redevelopment Authority,* 437 Pa. 55, 261 A.2d 594 (1970). As this decision, and our own analysis of the issue in *Redevelopment Authority of City of Erie v. Pulakos,* 17 Pa. Commonwealth Ct. 251, 330 A.2d 869 (1975), make clear, the purpose of the Assembled Economic Unit Doctrine as applied to condemnation proceedings is to preserve the economic position of a condemnee/businessperson whose business is damaged by

a condemnation. Essentially, where the relocation of a business as an intact economic unit cannot take place, the Doctrine may be applied so that MEF associated with the business may be valued along with the condemned property.

In the instant case, the lower court applied the Doctrine, reasoning that Condemnee's attempts to relocate, not only in the immediate vicinity, but in the City of Philadelphia at large, had proven utterly fruitless and that the building where Condemnee conducted his business, therefore, was unique. *See Redevelopment Authority v. Yee Kai Teung*, 5 Pa. Commonwealth Ct. 65, 289 A.2d 498 (1972). The Authority argues that the Doctrine should not apply in this case since (1) Condemnee is a tenant and not an owner of the condemned property; (2) most of Condemnee's MEF is removable; and (3) the building where Condemnee conducts his business is not so unique as to preclude transfer of Condemnee's business. While we believe that a tenant may have recourse to the Doctrine under certain circumstances, we do not believe that the Doctrine should be applied in this case.[3]

The thrust of the Authority's first argument is that the Doctrine applies only to landowners and not to tenants since Section 603 of the Code, 26 P.S. §1-603, from which the Doctrine in its present form in part takes root, applies only to landowners. The Authority goes on to suggest that Condemnee's claim to compensation as a tenant for damage done to MEF more properly lies under former Section 608 of the Code, now embraced in Section 601A, as added by the Act of December 29, 1971, P.L. 640, 26 P.S. §1-601A.

---

[3] Although our disposition of this issue obviates the necessity of addressing the question of the application of the Doctrine, under certain circumstances, to a tenant's claim, we feel the matter merits our consideration at this time.

For the reasons which follow, we believe that the Doctrine may be applied to compensate a tenant.

Former Section 608 provided that a tenant who owned MEF on a condemned property, not forming part of the realty, would be entitled to receive reasonable expenses for their removal, transportation and reinstallation. Items of MEF forming part of the realty, of course, would be valued along with the realty pursuant to Section 603(3) of the Code, 26 P.S. §1-603. The question remaining after Section 608 was promulgated in 1964, and before the Supreme Court handed down its decision in *Singer, supra,* dealt with "the compensability of loose machinery, equipment and fixtures in a business operation so affected by a condemnation that such machinery, equipment and fixtures, although their removal expense was compensable [under Section 608], were not useful in a new establishment." *Department of Transportation v. Seltzer,* 18 Pa. Commonwealth Ct. 127, 132, 334 A.2d 834, 837 (1975). It is evident, therefore, that while a condemnee/tenant might not have recourse to the provisions of former Section 608 (where, for example, he would have incurred no removal expense due to his inability to relocate his business as an economic unit), he would, logically, be compelled to look to the Assembled Economic Unit Doctrine for full compensation. After *Singer, supra,* a condemnee suffering just such a loss could only be fully compensated by application of the Doctrine.

Further, our analysis of the rationale of the Court's decision in *Singer* has failed to yield a single reason why the Doctrine should not apply with equal weight to compensate a condemnee/tenant if he happens to fall within one of the specific situations where the Doctrine applies. The Doctrine itself, as enunciated by the Court, affords no distinction which would preclude its application to a condemnee/tenant.

However, we consider it of profound importance that the same injustice to be avoided—providing less than full compensation to the owner of a business whose property interest is damaged by a taking and who is unable to relocate his business as an intact economic unit—is fully evident where the owner of the business is a tenant of the condemned property and not the owner thereof. His loss is no less great.

At least one court outside the Commonwealth of Pennsylvania has had occasion to apply a doctrine similar to the Assembled Economic Unit Doctrine in an effort to fully compensate a tenant. In *Redevelopment Agency of City of Stockton v. Diamond Properties,* 271 Cal. App. 2d 315, 76 Cal. Rptr. 269 (1969), for example, an appeals court held that a tenant's MEF should be deemed to be part of the real property for purposes of determining the amount of compensation owed to him as a result of the condemnation of the property where he conducted his business. *See also City of Los Angeles v. Sabatasso,* 3 Cal. App. 3d 83 Cal. Rptr. 898 (1970).

While research discloses no Pennsylvania case specifically holding that the Doctrine applies to a condemnee/tenant, our Court in *Redevelopment Authority of City of Johnstown v. Tross,* 20 Pa. Commonwealth Ct. 103, 340 A.2d 652 (1975), reviewed a jury's award of damages in an eminent domain case, noting that it ''included compensation for the tenant's equipment and personal property *and* the owners' building, *as permitted by the Assembled Economic Unit Doctrine.''* *Id.* at 108, 340 A.2d at 655 (emphasis in original and supplied). Further, a review of several of our other cases reveals authority for the proposition that the Doctrine clearly applies to an economic unit which occupies only a portion of a condemned property. *Pulakos, supra; Yee Kai Teung, supra; North Side Deposit Bank v. Urban Redevelopment Authority*

*of Pittsburgh,* 1 Pa. Commonwealth Ct. 274, 274 A.2d 215 (1971); *Pittsburgh National Bank v. Urban Redevelopment Authority of Pittsburgh,* 1 Pa. Commonwealth Ct. 248, 274 A.2d 567 (1971). Indeed, in *North Side Deposit Bank, supra,* we stated that "since the Code includes tenants within its definition of 'Condemnee', there is no apparent reason why the Doctrine should not apply to an economic unit such as a bank which occupies only a portion of a condemned property." *Id.* at 285, 274 A.2d at 220 (footnote omitted). Snitzer comments that "[w]hile there has yet been no reported case holding that the doctrine is applicable to a tenant, these cases clearly, and correctly, would warrant a court so holding." Snitzer, *supra,* at §603(3)-2.2. (1976 Supp.). We hold, therefore, that the fact that a condemnee happens to be a tenant does not preclude the award to him of damages for loss in value to MEF used in a business operated on the condemned property if it is established, for example, that the vast bulk of his MEF was not removable or that his business required a unique building.

Turning to the question of whether the Doctrine should be applied under the facts of this case, we note initially that the basis for the lower court's application of the Doctrine is not readily apparent. Nowhere in the record of the hearing before the lower court did Condemnee or his expert refer to the Doctrine or describe Condemnee's business, and, more importantly, his MEF, as an assembled economic unit. Similarly, the Authority's exceptions to the court's initial order make no reference to the Doctrine. Indeed, it was not until the lower court filed its opinion in response to these exceptions that the Doctrine was mentioned.

In any event, having carefully scrutinized the record, we are hardpressed to see how the Assembled Economic Unit Doctrine can be applied or, more im-

portantly, why it should be applied. The appraiser's report makes it clear that, with the possible exception of the walk-in cooler, the sign and some special electric wiring, all other items of MEF were removable and capable of being adapted and reinstalled in another location as a comparable economic unit. In *Singer, supra,* the Supreme Court refused to apply the Doctrine to the MEF of a grocery store. In our view, *Singer* dictates that, under the circumstances here, the Doctrine should not be applied.

With reference to the lower court's suggestion that the building where Condemnee conducted his business was somehow rendered unique because of Condemnee's alleged inability to acquire a building adaptable to his needs within a reasonable distance from his present location, suffice it to say that Condemnee's own testimony makes it abundantly clear that other suitable buildings did, in fact, exist but that he could not afford them. We fail to see how his alleged financial inability to relocate alters the fact that other suitable relocation sites were available.

In light of the foregoing, we will remand the matter to the lower court for a redetermination of the compensation due Condemnee.

### Order

And Now, this 22nd day of August, 1979, the order of the Court of Common Pleas of Philadelphia County, dated November 22, 1977, is affirmed, modified and reversed in part. That part of the order awarding compensation for Grover Driscoll's liquor license is affirmed. That part of the order awarding delay compensation is modified to the extent that delay compensation will be calculated from the date Driscoll relinquished possession of the condemned property. That part of the order applying the Assembled Eco-

nomic Unit Doctrine is reversed and the matter remanded for the determination of compensation due Driscoll without reference to the Doctrine.