433 A.2d 514

**Patricia L. LITWACK, Appellant,**

v.

**Gerald LITWACK.**

Superior Court of Pennsylvania.

Argued May 26, 1981.

Filed Aug. 7, 1981.

Petition for Allowance of Appeal Denied Nov. 30, 1981.

Howard Richard, Media, for appellant.

Jack A. Rounick, Norristown, for appellee.

Before WICKERSHAM, McEWEN and WIEAND, JJ.

WIEAND, Judge:

In this appeal from a declaratory judgment, we have been asked to determine whether a contractual duty to support a former wife "until she shall remarry ..." is terminated by her unmarried cohabitation with another man. The trial court equated unmarried cohabitation with marriage and held that the duty of support was thereby terminated. We disagree and reverse.

On January 26, 1973, prior to divorce, Patricia L. Litwack, appellant, and Gerald Litwack, appellee, executed a separation agreement which provided, inter alia, that he would make monthly support payments to her "until she shall remarry, die, reach the age of sixty-two (62) or shall first be eligible for Social Security payments, whichever shall first occur ...." Appellee continued to make these payments until October, 1979, when he discovered that appellant had lived with another man from December, 1978 to August, 1979.[1] He contended then, as he does in this Court, that appellant's cohabitation with a person of the opposite sex was equivalent to remarriage and relieved him of any further contractual obligation of support. Appellant filed a petition for declaratory judgment in order to obtain a judicial interpretation of the contract.

In construing a separation agreement a court must adopt that construction which gives effect to the parties' reasonable and probable intent, in view of the surrounding circumstances and purposes of the contract. *Kohn v. Kohn,*

---

1. During this period of cohabitation, appellant had engaged in sexual intercourse with her unmarried cohabitant. With the exception of the rent, however, she had paid her own expenses. The evidence did not disclose that they represented themselves to be husband and wife, and there is no evidence to indicate the existence of a common law marriage.

242 Pa.Super. 435, 442, 364 A.2d 350, 353 (1976). See also: *Wiegand v. Wiegand*, 349 Pa. 517, 37 A.2d 492 (1944). In a written contract the intent of the parties is the writing itself, and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. *R. F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A.2d 347, 351 (1973); *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 205 A.2d 865 (1965); *Redevelopment Authority of the City of Johnstown v. Tross*, 20 Pa.Cmwlth. 103, 340 A.2d 652 (1975). When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used. *Estate of Breyer*, 475 Pa. 108, 115, 379 A.2d 1305, 1309 (1977); *R. F. Felte, Inc. v. White*, supra 451 Pa. at 144, 302 A.2d at 351; *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, supra; *Hagarty v. William Akers, Jr. Co., Inc.*, 342 Pa. 236, 20 A.2d 317 (1941).

■ The meaning of the verb "marry" is clear. Black's Law Dictionary (Fifth ed. 1979) defines marriage as the "legal union of one man and one woman as husband and wife." This legal union entails certain duties and responsibilities, including a duty of financial support, which do not arise from cohabitation alone.

The parties' intent, as expressed in their separation agreement, is equally clear. So long as appellant lived and was not eligible to receive social security, appellee agreed to provide support for his former wife unless the legal obligation for appellant's support were transferred to another by a contract of marriage. Unmarried cohabitants may voluntarily contribute to the support of each other, but there is no legal obligation to do so, whether it be during cohabitation or after separation. In the instant case, for example, neither of the unmarried cohabitants assumed legal responsibility for the temporary or permanent support of the other. If appellee's contractual duty were to be deemed terminated by appellant's temporary cohabitation, appellant would be left without a right to receive financial support from her former cohabitant or from her former husband. This was not the

intention of the parties as they expressed it in their written agreement. The language of the agreement being clear, the superficial resemblance of unmarried cohabitation to marriage does not warrant an interpretation of the contract which is contrary to the expressed intent of the parties. Cf. *Mitchell v. Mitchell*, Me., 418 A.2d 1140 (1980).

■ Appellee contends that the policy announced in Section 507 of the Divorce Code of April 2, 1980, P.L. 63, No. 26, 23 P.S. § 507, requires a contrary interpretation. This section provides:

"No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex..."

This section applies to applications for alimony and does not purport to affect private, contractual obligations. Moreover, this provision was not enacted until seven years after execution of the parties' agreement, and it cannot be deemed a factor in ascertaining their intent. Finally, if we view the statute as enunciating a policy not to allow "double support," that policy cannot impair the contract freely entered by the parties in 1973. See: *Leffler v. Leffler*, 50 A.D.2d 93, 95, 376 N.Y.S.2d 176, 178 (1975).[2] "No assertion of fraud or mistake attendant upon the execution of the separation agreement is made. So long as a separation agreement stands unimpeached, the court cannot alter or change a provision for separate maintenance and support of the wife without the consent of both parties ... [A]bsent such impeachment, there is no authority for the court to cancel a contract made by the parties and in its place substitute one which it thinks proper but which as a matter of fact the parties had never assented to." *Leffler v. Leffler*, Id. See also: *Hirschfield v. Hirschfield*, 54 A.D.2d 656, 388 N.Y.S.2d 578 (1976).

The cases cited by appellee and relied upon by the court below are not apposite. In *Sims v. Sims*, 245 Ga. 680, 266 S.E.2d 493 (1980), the Court held that voluntary cohabitation

2. Affirmed at 40 N.Y.2d 1036, 391 N.Y.S.2d 855, 360 N.E.2d 355.

with a person of the opposite sex was a valid basis under Georgia law for terminating alimony payments previously ordered by a court. Similarly, *Taake v. Taake*, 70 Wis.2d 115, 233 N.W.2d 449 (1975) is a case involving the modification of court ordered payments of alimony under Wisconsin law. In neither of these cases was the court called upon to interpret a private, contractual provision similar to the one in the instant case.

■ Appellee also contends that appellant, by her misconduct, forfeited her right to receive support for the period during which she maintained a meretricious relationship with another man. A wife's adultery or similar misconduct, however, is no defense to a contractual duty of support unless the provisions of the contract so provide. There is no such provision in the instant contract. This court cannot read into the agreement a provision which the parties chose not to insert. See: *Gutman v. Gutman*, 51 A.D.2d 535, 377 N.Y.S.2d 641 (1976); *Maloy v. Maloy*, 362 So.2d 484 (Fla. App.1978).

Our decision does not alter the policy of this Commonwealth which favors marriage over adulterous relationships by unmarried cohabitants. It does no more than interpret the written agreement of the parties. If they had intended appellee's duty to support his former wife to come to an end if she engaged in "a relation akin to marriage" or committed adultery, there is no reason why they could not have so provided. In fact, their agreement contains no such provision, and we will not re-write it for them. We cannot add a provision to which the parties have not agreed merely because of our own or another's concept of right and/or fairness.

Reversed and remanded for the entry of an adjudication consistent with the foregoing opinion.

McEWEN, J., files a dissenting statement.

McEWEN, Judge, dissenting:

I dissent. The learned Common Pleas Judge expresses certain very persuasive reasons for voiding the provisions of the agreement relating to support and for those reasons, I would suspend the contractual obligation to support for and during the period of cohabitation.