# Miller v. Miller

*John D. Conroy,* for plaintiff.
*Marcel L. Groen,* for defendant.

KANE, *J.,* December 4, 1987 — Husband in the above captioned divorce and support actions has filed a petition to terminate and/or modify an existing alimony order and to remit any arrears which are outstanding on that order. In his petition he has alleged that wife's cohabitation should act as a bar to her receipt of alimony payments.

At a hearing on August 7, 1987, we heard the testimony of husband, wife, and a private investigator retained by husband and concluded that wife has in fact cohabited since Thanksgiving of 1986 (subsequent to the divorce proceeding), with a person of the opposite sex who is not a member of her immediate family. (23 P.S. §507) We took under advisement the legal question of what impact, if any, such cohabitation would have on husband's alimony obligation. Having now had an opportunity to review

the pertinent statutes and case law which we deem to be relevant, we offer this memorandum opinion in support of the attached order.

The most recent appellate cases on the issue of alimony termination, which will be addressed infra, make it clear that the procedural history of the divorce litigation involving the parties as well as the attendant documents surrounding their divorce must be reviewed before alimony termination occurs. The documents involved herein consist of an agreement, a consent order and the divorce decree.

The agreement was executed on February 3, 1984 by the parties, both of whom were at the time of its execution represented by counsel and neither of whom at this point allege any fraud in the preparation or execution of that document. A fair characterization is that the agreement represents a comprehensive settlement of the parties' legal and financial circumstances arising from their marriage and contains provisions having to do with the marital residence, insurance, medical and hospitalization coverage, personal property, automobiles, debts, counsel fees, legal advice, in addition to a provision dealing with the subject of alimony. The alimony provision provides in pertinent part:

"*Article III — Alimony*. The husband shall pay the amount of $225 per week to the wife as and for alimony. Such payments shall commence on the date of closing of the marital residence above. Upon the entry of a consent order with respect to same, payments shall be made through the Office of Domestic Relations, Doylestown, Pa. Until such time as the above consent order is entered, the husband shall make direct payments of alimony to the wife, pursuant to the terms of this agreement.

"Payments of alimony shall be made by the husband until further order of the court. The current

payment of alimony is based on the husband's present income of $45,000 per year, and shall be subject to modification upon the showing of a substantial change of circumstances of the husband. The husband's retirement from Libby Owens Ford with no substantial future employment shall be a substantial change in circumstances.

"The payment of alimony above shall not be subject to any change in circumstances in the wife, and any income received by her through employment shall not be considered a factor in the modification of the amount agreed on for alimony or ordered by the court.

"Alimony shall be increased on an annual basis commencing January 1, 1985 in accordance with the plan set forth in schedule "A", the acceptance of this plan by the wife shall be deemed a waiver by the wife of any claim for increased alimony. Any decrease in the husband's income shall not be considered as a reduction in the wife's alimony on a percentage basis, but shall be only a factor in considering whether or not the husband has undergone a substantial change in circumstances, pursuant to this agreement.

"Alimony shall continue until further order of the court, but shall terminate upon the death of either party or the remarriage of the wife, subject to the terms and conditions of this agreement . . ."[1]

The consent order referred to in the agreement was executed by the parties on April 7, 1984, at the

---

1. The provision pertaining to alimony further provides that when husband receives only pension and retirment income, that wife will then be receiving 50 percent of the monthly benefit from his pensions and at that time regular alimony payments under this agreement would cease. During this time, the alimony payments representing 50 percent of the pensions would not be reduced for any reason.

Court of Common Pleas of Bucks County, Domestic Relations Division and thereafter entered as an order of court.

On May 9, 1984, a decree in divorce was entered which provided inter alia:

"And it is further ordered, adjudged and decreed, pursuant to Pa.R.C.P. 1920.1 et seq and Act 26-1980, 23 P.S. § 1 et seq. 'The Divorce Code,' that the terms, provisions and conditions of a certain agreement between the parties, dated February 3, 1984, which is attached to this decree and order and incorproated into this decree and order by reference as fully as though the same were set forth herein at length. Said agreement shall not merge with but shall survive this decree and order.

"This court hereby retains continuing jurisdiction over this decree and order for the purpose of ensuring compliance with and enforcement of the terms of the agreement as attached hereto."

The issue before this court is whether or not the provision pertaining to alimony in the agreement can be modified by this court by virtue of the fact that the agreement was incorporated in a decree of divorce and thereby made an order of this court. Husband argues that due to this incorporation and the fact that a consent order was entered by the parties for payments to be made through the Domestic Relations Office, this court has the power and the right to modify the written agreement of the parties.

As we perceive this situation, three questions must be asked and answered. First of all, what is the effect of the language "incorporate but not merge" and "survive the decree" in the agreement and order and does this language foreclose a court from modifying the parties' agreement? Secondly, assuming the answer above is in the affirmative, what is the impact, if any, of section 501 of the divorce

code pertaining to modifiability of all alimony orders entered pursuant to that section and section 507 specifying that cohabitation shall be a bar to an award of alimony of this agreement? Lastly, is the language in the agreement itself susceptible to an interpretation that the parties intended that alimony be modifiable and terminable in the event of cohabitation?

We look initially at the language of the agreement itself and divorce decree to ascertain whether the parties intended their agreement to be merged. There is no dispute that the agreement itself is valid, that the parties were represented by independent competent counsel and that the agreement was entered into freely without fraud or duress. *Millstein v. Millstein,* 311 Pa. Super. 495, 457 A.2d 1291 (1983). It is clear from the express language of this agreement and the divorce decree that the parties intended that the agreement not be merged into the order and not be modifiable by the court. In a written contract the intent of the parties is the writing itself, and when the words are clear and unambiguous the intent is to be determined only from the express language of the agreement. *Litwack v. Litwack,* 289 Pa. Super. 405, 408, 433 A.2d 514, 515 (1981), quoting other cases.

The agreement contains, among other provisions, three articles titled respectively:

(1) ARTICLE XIII — Effect of Divorce Upon Agreement
(2) ARTICLE XVI — Agreement to Continue in Event of Divorce
(3) ARTICLE XIX — Modification

Paraphrased, these three articles state that (1) the parties agree the agreement shall be incorporated in a decree of divorce; (2) the agreement shall not be merged with any judgment of divorce but shall con-

tinue in full force and effect, have independent legal significance and survive any decree entered and that the agreement wil not be affected by entry of a divorce decree except as provided for in the agreement; (3) there will be no modification of the agreement unless in writing and signed by the party sought to be entered.

In *Millstein v. Millstein,* the agreement contained language to the effect that it was the parties' intent that merger not occur; that the agreement was to "remain in full force and effect regardless of any change in the marital status of the parties" and was to be modified only upon written agreement. The court held that it was "clear that the parties' intent was that merger should not occur." *Millstein, supra.*

In *McGough v. McGough,* 361 Pa. Super. 391, 522 A. 2d 638 (1987), the divorce decree provided that the "settlement agreement shall not merge with but shall survive the decree and the order." In *McGough,* as in the case before this court, the property settlement agreement of the parties was a vehicle for resolving and determining for all times the parties rights and obligations arising from the marital relationship, including the settlement of all economic aspects of that marriage. The court stated, "nothing suggests that this agreement was entered into with an understanding that it would later merge into a divorce decree and thereby be rendered modifiable by the courts. To the contrary, the agreement suggests that [wife] relinquished valuable property rights and potential claims for counsel fees and costs in exchange for and in reliance upon certain promises made by her husband . . ." McGough, *supra.*

We hold that in this case it was the parties clear intent that their agreement survive any decree and

be incorporated but not merged within the decree. We are aware of the *Tokach* decision but it is our impression and understanding that the *Tokach* decision should be and is restricted to its facts and therefore not applicable to the matter before this court. *Pennsylvania ex rel Tokach v. Tokach,* 326 Pa. Super. 359, 474 A. 2d 41 (1984). *Madnick v. Madnick,* 339 Pa. Super. 130, 133, 488 A. 2d 344, 345 (1985); *McGough v. McGouch,* 361 Pa. Super. 391, 522 A. 2d 638 (1987).

We turn now to the second question above posed; that is, what effect, if any, do section 501 (modifiability of alimony orders enteed pursuant to this section) and section 507 (cohabitation is a bar to an award of alimony) have on this agreement and alimony order.

An argument has been advanced that since a collateral consent order was entered by the parties, this evidences an intent to have the alimony portion of the agreement enforced and governed by the court, and hence modifiable. The *Madnick* case, while dealing with child support, is directly on point. In that case, as in *Millstein,* the parties entered into a comprehensive settlement agreement and as part of that agreement provided that a stipulation was then to be entered as a court order. The court in *Madnick* opined:

"[t]he agreement here clearly demonstrates the parties' intent to create a contractual obligation independent of the obligation to pay court-ordered support . . . The purpose of requiring that the contractual obligation created by [that provision in the property settlement agreement] should also be entered as a court order is plainly not to extinguish the contractual obligation as fast as it has been created, but to provide an alternative enforcement method so long as the court-ordered support re-

mains at the same level as the separately created contract obligation . . ." 339 Pa. Super. at 133-4, 488 A.2d at 346 (1985).

The result is no different when the parties enter a collateral consent order so that the alimony payments will be made through the domestic relations office, thereby ensuring an accurate accounting of payments and an alternative enforcement method.

However, because of the incorporation of the agreement in the divorce decree, the alimony provisions, as well as the other provisions, are enforceable through the Divorce Code. *Hollman v. Hollman,* 347 Pa. Super. 289, 500 A.2d 837 (1985); *Magee v. Magee,* 360 Pa. Super. 66, 519 A.2d 994 (1987).

Section 301 — jurisdiction — of the Divorce Code provides that this court is to issue appropriate decrees concerning property settlement agreements involving, among other issues, alimony, and may retain jurisdiction over the decree.[2] The decree here provides, "This court hereby retains continuing jurisdiction over this decree and order and for the pur-

---

2. 23 P.S. §301; *Jurisdiction* —

"(a) The courts of this commonwealth . . . shall have original jurisdiction in cases of divorce . . . and . . . shall determine in conjunction with any decree granting a divorce or annulment the following matters, where raised in the complaint or answer and issue appropriate decrees or orders with reference thereto and may retain continuing jurisdiction thereof:

"(1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial, or separation agreement . . . and the order of any alimony, alimony pendente lite, counsel fees or costs authorized by law.

" (4) Any property settlement, involving any of the matters set forth in paragraphs (1), (2) and (3) as submitted by the parties."

pose of ensuring compliance with and enforcement of the terms of the agreement as attached hereto."

Counsel for husband argues that because the alimony payments are enforceable by virtue of the divorce code, that all provisions of the code, specifically that of section 501(e) are applicable to and control the terms of the parties agreement. A recitation of portions of section 501 is necessary.

Section 501 — alimony — in paragraph (a) provides that the court may award alimony, as it deems reasonable, to either party, but only if the court finds that the party seeking alimony lacks sufficient property to provide for his/her reasonable needs and is unable to support through appropriate employment. Paragraph (b) lists the factors to be considered in determining whether alimony is necessary. Paragraph (d) provides that when an order is made pursuant to this section the court will set forth the reasons for the award or the denial. Paragraphs (e) and (f) provide:

"(e) *Any order entered pursuant to this section* is subject to further order of the court upon changed circumstances of either party of a substantial and continuing nature whereupon such order may be modified, suspended, terminated, reinstated, or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. Remarriage of the party receiving alimony shall terminate the award of alimony.

"(f) *Whenever the court shall approve* an agreement for the payment of alimony voluntarily entered into between the parties, such agreement shall be deemed the order of the court and may be enforced as provided in section 503." (emphasis added). (Section 503 provides for the enforcement of arrearages).

Counsel for husband argues that as section 507[3] prohibits an award of alimony to a wife who has entered into cohabitation, once wife herein cohabited, §501(e) was activated and the alimony agreement/order became modifiable. Further, any previous obligation of husband to pay terminated.

As in the cases of *Vankirk v. Vankirk*, 336 Pa. Super. 502, 485 A.2d 1194 (1984); *Lee v. Lee*, 352 Pa. Super. 241, 507 A.2d 862 (1986); and *Reighard v. Reighard*, 42 D.&C. 3d 356 (1985), we draw what we believe to be a significant distinction between an order entered that is an award of alimony made by a court after consideration of paragraphs (a) and (b) of section 501 and an order entered by a court that is an approval of an agreement of the parties for payment of alimony. As to the former, it is apparent that section 501(e) applies; as to the latter, it is just as apparent that it does not.

In *Reighard*, the court was presented with substantially the same, if not exact, set of circumstances as those now confronting this court. The parties in that matter entered into a comprehensive property settlement agreement which set forth, in addition to other areas, their understanding as to receipt by wife of alimony. That provision provided that husband was to pay as permanent alimony until either wife's or husband's death, the sum of $75 for 85 weeks. This agreement was thereafter incorporated into the divorce decree. Wife subsequently remarried prior to the expiration of the 85 weeks.

3. 23 P.S. §507. *Bar to any alimony* — No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex who is not a member of petitioner's immediate family within the degrees of consanguinity subsequent to the divorce pursuant to which alimony is being sought.

The husband, relying on section 501(e), argues that remarriage was a bar to alimony and therefore a change of circumstances that would result in the modification and termination of the alimony. The court, ruling that the alimony was not modifiable, noted that it was obvious that the court had not considered the factors specified in section 501(b) when it entered the divorce decree, and therefor the provision of section 501(e), providing that "any order entered pursuant to this section is subject to further order of the court upon changed circumstances," was not applicable. The court in *Reighard* instead followed the dictates of section 501(f) and approved a voluntary agreement of the parties, which by virtue of the operation of section 501(f) was deemed an order of the court, with any arrearages enforceable through section 503.

The Superior Court in *Lee v. Lee, supra,* also was confronted with the application of section 501(e) to an agreement to pay alimony. Although quoting from the *Hollman* decision and stating that "where a court order is entered pursuant to an agreement, the order is subject to modification in the event of a substantial change in circumstances,"[4] the court in *Lee* went on to suggest that nevertheless the intent of the parties is controlling. In *Lee,* the parties entered into a comprehensive property settlement agreement which included a provision that "a support order be entered in the probation office of Fayette County, Pennsylvania for husband to pay $450 per month and maintain hospitalization benefits for wife." This order was so entered and thereafter a decree in divorce was entered. The court, at

4. *Lee v. Lee,* 352 Pa. Super. 241, 245, 507 A.2d 862, 864 (1986), citing *Hollman v. Hollman,* 347 Pa. Super. 289, 299, 500 A.2d 837, 846 (1985).

864, stated: "The intent of the parties is clear. They did not create a contractual obligation for the payment of alimony which was separate and apart from the court order. Instead their only agreement was *that a support order in favor of the wife be entered by agreement.*' "

We find that in the matter before us, it was the clear intent of the parties that a contractual obligation for the payment of alimony be established. Further, that the court, in signing the divorce decree of May 9, 1984, simply approved the agreement of the parties but did not enter an award of alimony pursuant to section 501(a) and (b). Therefore, sections 501(e) and 507 are not applicable.

We lastly address the question of whether or not the parties intended that the alimony payment would terminate upon wife's cohabitation. In this case, the parties did not so provide in their agreement. The language contained in the provision on alimony is very clear and unambiguous in the description of the terms, conditions and methods of the alimony payments. Alimony is to be paid weekly in the amount of $225 per week and is to terminate upon the death of either party *or* the remarriage of the wife. The agreement further specifies what will and will not be considered a basis for modifiability: substantial change of circumstances of the husband (i.e., his retirement with no substantial future employment being such a change but a decrease in his income being only a factor). Most importantly, the agreement specifically states that "no change of circumstances of the wife shall be considered a change of circumstances." That is, no change in circumstances shall be a basis for adjusting alimony. The agreement makes no provisions for the cessation of payments in the event of cohabitation, but it quite clearly does in the event of remarriage or

death. As in the *Vankirk* and *Litwach* cases, we must conclude that had the parties intended the payments to cease upon cohabitation, they would and could have so provided. *Vankirk v. Vankirk,* 336 Pa. Super. 502, 485 A.2d 1194 (1984); *Litwack v. Litwack,* 289 Pa. Super. 405, 433 A.2d 514 (1981). We are therefore constrained to conclude that the parties intended that cohabitation would not form a basis to bring about a cessation in alimony payments.

For the foregoing reasons we enter the following

## ORDER

And now this December 4, 1987, husband/petitioner's application to modify and/or terminate alimony payments is denied, dismissed and overruled. It is further ordered and decreed that husband is to satisfy outstanding arrears in connection with the above-captioned matter within seven days of the date of this order.