**Sosnoski v. Sosnoski**

*Angelo A. Papa*, for plaintiff.
*Nicka A. Frisk Jr.*, for defendant.

HODGE, *J.*, April 20, 2011—This case was before the court on September 20, 2010 for a hearing on a petition for contempt and enforcement of marital settlement agreement filed on behalf of the plaintiff, Shirley Sosnoski (hereinafter "wife"). After a complete hearing was held before the court, counsel for the parties were ordered to submit to the court memorandums of law relative to the factual and legal issues presented at the hearing. Counsel has complied with the court's request and the matter is fit for the court to make a determination.

A brief summary of the relevant factual background can be summarized as follows: A complaint in divorce was filed on September 18, 2004. On July 18, 2006, the parties entered into a marital settlement agreement (hereinafter "MSA"). However, the same was never filed by plaintiff's counsel, and on January 16, 2007 a motion to compel compliance with marital settlement agreement was filed on behalf of the defendant, Martin Sosnoski (hereinafter "husband"). An order of court was subsequently issued directing wife's counsel to filed the MSA, wife's affidavit of consent and wife's waiver of notice of intention to request entry of divorce decree under Section 3301(c) of the Divorce Code pursuant to the Pennsylvania Divorce Code. Husband was further ordered to pay wife $7,000

for her interest in a 1971 Corvette owned by the parties. Wife's counsel complied with the directions of the court; however husband had not paid wife the $7,000 as directed. On February 8, 2007, the court entered a decree in divorce.

On May 14, 2007 a petition for contempt and special relief was filed on behalf of wife. In her petition, wife alleged that there were still outstanding obligations/requirements of husband under the MSA and specific relief based on husband's failure to comply with the MSA. The court then entered a rule to show cause upon husband and scheduled a hearing. An answer was filed by husband and a hearing was held on June 8, 2007.

Prior to the court issuing an order from the June 8, 2007 hearing, plaintiff filed a motion for emergency special relief. In the motion, plaintiff alleged irreparable injury pending the court's determination and sought injunctive relief whereby husband was prohibited from further dissipating marital assets as well as reimbursement for attorney's fees associated with her attempts to enforce the parties' MSA. The court again entered a rule to show cause upon husband and scheduled a hearing for May 30, 2008. Husband responded by filing an answer and new matter asserting that wife has not complied with the MSA and seeking attorney's fees and reimbursement for other costs.

To complicate matters further, the transcript for the hearing held on June 8, 2007 was damaged beyond repair, and the court was forced to schedule a re-hearing on the petition for contempt and special relief. After multiple

continuances requested by both sides and on the court's own motion, a second hearing was finally held on September 20, 2010.

In Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts, unless the agreement itself provides otherwise. *Caccavo v. Caccavo*, 565 A.2d 1199 (Pa. Super. 1989); *Sonder v. Sonder*, 549 A.2d 155 (1988). Hence, when the language of such an agreement is clear and unambiguous, the focus of the interpretation must be upon the terms as manifestly expressed. *Caccavo*, supra, 565 A.2d at 1202. The standard of enforceability of a contractual agreement is also clear: "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon*, 612 A.2d 1360, 1363 (Pa. Super.1992) (citations omitted). As such, a trial court may interpret a marital settlement agreement like a contract, but the court has neither the power nor the authority to modify or vary the decree unless there is conclusive proof of fraud or mistake. *Bianchi v. Bianchi*, 859 A.2d 511,515 (Pa. Super. 2004).

When construing agreements involving clear and unambiguous terms, a trial court need only look to the writing itself to give effect to the parties' understanding. *Vaccarello v. Vaccarello*, 563 Pa. 93, 101, 757 A.2d 909, 913-914 (Pa. 2000). A court may not modify the plain meaning of the words under the guise of interpretation. *Id*. In addition, this court must consider such contracts without reference to matters outside of the document, and we must ascertain the parties' intentions when entering into the contract from the entire instrument. *Purdy v.*

*Purdy*, 715 A.2d 473, 475 (Pa. Super. 1998). Additionally, the parties are bound "without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains." *Sabad v. Fessenden,* 825 A.2d 682, 688 (Pa. Super. 2003).

After a careful review of the MSA, the court notes that both parties were represented by counsel and entered into this agreement freely. Each committed to abiding by the terms thereof and in doing so agreed not only to devise a plan for payment of outstanding debt but also to relinquish all other interest in each other's property. The validity of the MSA was finalized when it was originally incorporated in the divorce decree and no appeal asserting fraud or mistake in the execution of the MSA was taken subsequent to it being filed. As such the MSA is deemed valid. *Jackson V. Culp,* 583 A.2d 1236, 1239 (Pa. Super. 1990); *Sonder v. Sonder,* 549 A.2d 155, 159 (Pa. Super. 1988); *Litwack v. Litwack,* 433 A.2d 514, 516 (Pa. Super. 1981). The court now looks to determine whether either party has willfully failed to comply with the terms of the agreement.

In 1988, Section 3105(a) of the Divorce Code was amended to read as follows:

"*(a) Enforcement.* — A party to an agreement regarding matters within the jurisdiction of the court under [the Divorce Code], whether or not the agreement has been merged or incorporated into the decree, may utilize a remedy or sanction set forth in [the Divorce Code] to enforce the agreement to the same extent as though

the agreement had been an order of the court except as provided to the contrary in the agreement."

Courts have consistently utilized Section 3105 to enforce marital settlement agreements through a civil contempt complaint regardless of whether or not the agreement has been incorporated or merged into, or reduced to, an order. See, e.g., *McGinnis v. McGinnis*, 654 A.2d 563 (Pa. Super. 1995); *Jackson v. Culp*, 583 A.2d 1236 (Pa. Super. 1990)(Section 3105 facilitates enforcement of a marital settlement agreement by providing an alternative enforcement vehicle in the form of a civil contempt complaint).

Several issues are put before the court relating to assets classified as marital property, or property affecting the distribution thereof. Specifically, wife claims she is entitled to credit for: 1) personal jewelry that was destroyed when the parties' marital residence was burned in a fire; 2) one half of her interest in a 1971 Corvette; and 3) one half the value of the parties' time-share in Hilton Head, South Carolina. Alternatively, husband claims that he is entitled to credit for: 1) payments made on the loan obtained by the parties for the purchase of the Hilton Head time-share; 2) payments made on two credit cards utilized by wife; 3) $24k removed by wife an ESB bank account issued to both parties; and 4) $15,000 wife received from husband in September of 2008. Both parties have made a claim for attorney's fees in an effort to enforce specific provisions of the MSA. The court will dispose of each of the above listed claims in the following discussion.

The portion of the MSA that references wife's jewelry

reads as follows: "husband shall account for items like *melted jewelry*, computer, and share equally any value, or alternatively confirm the lack thereof. MSA § 3.02(C)(5). In resolving this issue, the court notes that the parties stipulated that they each received $45,062.00 from their insurance carrier for their personal belongings lost when their marital residence was destroyed in a fire. (N.T. Sept. 20, 2010, p. 58) Additionally, husband testified that any remnants from the fire have since been "hauled away" and that he is unaware of any existing melted jewelry that may have survived the fire. (N.T. p.46) The court finds that wife has been properly compensated for any personal jewelry lost in the fire by the insurance company and that Husband's testimony clearly indicates that the jewelry no longer exists. The court therefore denies wife's request for compensation for said jewelry.

With respect to the 1971 Corvette, §3.02(c)(1)(B) of the agreement states that "husband shall have as sole and separate property...1971 Corvette, subject to buying out half of wife's value in the automobile (14,000)." When husband's counsel initially presented the court with a motion to compel compliance with marital settlement agreement for the parties on January 12, 2007, the resulting order of court ordered that wife's counsel file the marital settlement agreement and that husband pay wife the sum of $7,000 for her interest in the 1971 Corvette. It is the recollection of the court that the sum of $7,000 was determined to be half of wife's value in the automobile; this figure is consistent with the language set forth in the agreement. Therefore wife shall receive credit in the amount of $7,000.

The next issue put before the court involves the time-share purchased by the parties during the course of marriage. The MSA expressly provides in Section 3.02(c)(4) that "[t]he parties shall equally split the value of the time-share." Based on this provision, wife argues that she is entitled to $13,000.00 for her half interest in the time-share. Wife's calculation is based on the fact that when the parties purchased the time-share, they paid $26,000. Husband also testified to this fact at the September 20, 2010 Hearing. (N.T. p. 26)

Alternatively, husband testified that at the time of separation the parties still owed $22,464.47 on the loan used to purchase the time-share. (N.T. Sept. 20, 2010, p. 37) After separation, husband made monthly payments in the amount of $279.44 for a period of 70 months; he then made a final payment on July 7, 2010 in the amount of $2,903.67. Additionally husband testified that he paid an annual fee of $700.00 for the general upkeep, maintenance and taxes on the time-share. (N.T. Sept. 20, 2010, p. 29) Husband asserts that he should receive credit in the amount of $11,232.23 for costs associated with the time-share.

The date for valuation of marital property is generally the date of trial or distribution. *Sutliff v. Sutliff*, 518 Pa. 378, 543 A.2d 534 (Pa. 1988); *Nagle v. Nagle*, 799 A.2d 812 (Pa. Super. 2002) (it may be more equitable, however, to value marital assets at the date of separation in certain situations that warrant such a valuation). In determining the proper value for this marital asset, the court considers the fact that the parties paid $26,000 (N.T. Sept. 20, 2010, p. 26) for the time-share at the time of purchase. Although husband testified that the time-share has substantially

decreased in value (N.T. Sept. 20, 2010, p. 63-64), the court finds that there is insufficient evidence to establish a valuation based on its present value.

The court concludes that the following distribution is appropriate and consistent with the parties' MSA: wife shall receive $13,000 for her half interest in the time share. However, husband shall receive credit in the amount of $11,232.23, being half of the balance owed on the loan used to purchase the time share. The result being that wife shall receive $1,767.77 ($13,000 - $11,232.23). The court further finds that husband is not entitled to credit for the $700.00 annual maintenance fee, as he was the only party who utilized the time-share since the parties separated. Alternatively, husband shall retain title to the time-share, and the parties are directed to ensure that husband alone has title to the same.

Husband also contends that he is entitled to credit for payments made on two credit cards utilized by wife during the course of marriage. The credit cards were issued in husband's name, but provided to wife for her personal use. (N.T. Sept. 20, 2010, p.49) Husband requests to receive credit for half the debt owed on these credit cards at the time of separation. Husband contends that the total amount owed on the two credit cards was $6,000, and that he is therefore entitled to a credit in the amount of $3,000. However, after a close review of the MSA, the court finds that husband is not entitled to any credit for payments he may have made on the credit cards in question. Section 3.02(6) expressly states that "all charge cards...are to be voided, which existed at [the] date of separation." Furthermore, the court finds that there is insufficient evidence to establish that the

credit card debt was incurred by wife or that any debt does in fact exist, as the only evidence to support such a finding was the testimony from husband. This finding shall, by no stretch of the imagination, lead either party to believe that the court finds husband's testimony to be unreliable, but only that there is insufficient evidence to support an award to husband for said debt.

On August 30, 2004, the day after the parties were legally separated. (N.T. Sept. 20, 2010, p. 18) Wife removed $24,107.00 from an ESB bank account previously used by the parties during their marriage. (N.T. Sept. 20, 2010, p. 58-59) The funds in the ESB bank account were clearly marital in nature and subject to equitable distribution. See 23 Pa.C.S. §3501(a); *Drake v. Drake*, 555 Pa. 481, 725 A.2d 717 (Pa. 1999). Husband is seeking credit in the amount of $12,053.50 for his portion of these marital funds. Consistent with the marital settlement agreement, which expressly included the underlying "theme" that the parties equally share, "50/50", all marital debt and property, the court determines that husband shall receive credit in the amount of $12,053.50.

Wife additionally received $15,000 from husband in September of 2008. Husband provided this amount to wife to avoid foreclosure actions on wife's residence. The parties stipulate to this fact. As such, husband shall receive credit for the sum of $15,000. The court determines that husband is entitled to full credit for this advancement, as the money was provided after separation from non-marital funds.

The court additionally finds that neither party shall be

awarded attorney's fees. This case has been litigated for over seven years, with multiple continuances being granted on behalf of both parties. The matter was further prolonged by the court's stenographer being unable to transcribe the notes of testimony from the June 8, 2007 hearing. Both parties have been prejudiced by the numerous delays, and the court refuses to further penalize either party by awarding attorney's fees.

Accordingly, the court will enter the following order enforcing the marital settlement agreement and deciphering specific portions thereof.

## ORDER OF COURT

And now, April 20, 2011, the court having held hearing on September 20, 2010, on a petition for contempt and for enforcement of marital settlement agreement filed on behalf of the plaintiff, Shirley Sosnoski, by and through her counsel, Angelo A. Papa, Esquire, and on a response to said petitions filed on behalf of the defendant, Martin Sosnoski, by and through his counsel, Nick A. Frisk, Jr., Esquire, and the court having had the opportunity to conduct a thorough review of the entire record as well as the transcript from the September 20, 2010 hearing, and in accordance with the attached opinion, it is hereby ordered and decreed as follows:

1. The court therefore denies wife's request for compensation for said jewelry.

2. Wife shall receive credit in the amount of $7,000 for one half her interest in the 1971 Corvette.

3. Wife shall receive $13,000 for her half interest in the time share. However, husband shall receive credit in the amount of $11,232.23, being half of the balance owed on the loan used to purchase the time share. The result being that wife shall receive $1,767.77 ($13,000 - $11,232.23).

4. Husband is not entitled to any credit for the $700.00 annual maintenance fee on the parties' time-share.

5. Husband shall retain title to the time-share, and the parties are directed to ensure that husband alone has title to the same within thirty (30) days from the date of this order.

6. Husband's request for credit in the amount of $3,000.00 for payments made on credit card debt is denied.

7. Husband shall receive credit in the amount of $12,053.50 for his portion of marital funds removed by wife from the parties' ESB bank account.

8. Husband shall receive credit in the amount of $15,000 for funds provided to wife after the parties were separated.

9. The parties' requests for attorney's fees are denied.

10. Based on the above findings the court calculates that wife is entitled to a total credit of $8,767.77 and husband is entitled to a total credit of $27,053.50. The difference of which results in husband being awarded a net crediting totaling $18,285.73.

11. Attorney Angelo Papa shall prepare a qualified domestic relation's order within 30 days from the date of this order.

12. Husband's credit shall be offset against any outstanding payments due to wife pursuant to the QDRO or against any future payments husband is required to make there under.

13. The parties are further orders to comply with all provisions of the marital settlement agreement, which shall remain in full force and effect.

14. The prothonotary shall properly serve notice of this order and opinion by regular mail or personal service upon counsel of record and any party not represented by counsel at their last known address as contained in the court's file.